In the Matter of the Application of M. ITZKOWITZ & SONS, INC., Petitioner, for an Order of Mandamus against JAMES F. GERAGHTY, Commissioner of Licenses of the City of New York, Respondent.

Supreme Court, New York County, January 27, 1931.

*Harmon Ackerman*, for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel [Nelson Rosenbaum* of counsel], for the respondent.

LYDON, J. A license is a privilege from the State, and it is solely within the discretion of the commissioner to grant the license. Chapter 14, article 1, section 3, of the Code of Ordinances of the City of New York was enacted giving the commissioner of licenses the following power: " All applications for licenses shall be made to the commissioner of licenses, in such form and detail, as he shall prescribe." In *Matter of Picone* v. *Commissioner of Licenses* (241 N. Y. 157) the above provision of the Code of Ordinances was construed, and the court in effect held that the commissioner of licenses has power to promulgate such rules and regulations as would disclose the moral character of an applicant for a license.

On June 4, 1930, the commissioner of licenses of the city of New York established a rule that the department of licenses would not issue a renewal or an original license to deal in second-hand articles unless the applicant, or if applicant was a corporation, an officer thereof, as part of the form and detail of the application, submitted his finger-prints. This rule the commissioner claims was made in order to aid him in using his discretion to determine whether

or not a license as dealer in second-hand articles should issue to an applicant. The petitioner has been in business for several years, selling second-hand sewing machines. Licenses have been previously procured and the petitioner applied for a renewal of its license and the necessary bond was provided for and the application was complete with the exception of the fact that it did not contain the finger-prints of the applicant, as required by the rule established by the commissioner.

The petitioner objects to the regulation upon the following grounds: *First*, that finger-printing brands one as a criminal; *second*, that the regulation requiring an applicant to be finger-printed is unconstitutional; and *third*, that the regulation requiring an applicant to be finger-printed is not a reasonable regulation and not within the power of the commissioner of licenses. The use of finger-prints as a means of identification dates back many years and in 1891 was adopted as the system of identification in criminal courts in England. Since that time there has been a gradual adoption of finger-printing as a means of identification by banks and other corporations, passport bureaus of foreign governments and the civil service commission in New York city, all as a certain protection against impersonation. Prior to 1922 the savings banks adopted finger-printing as a means of identifying certain of their depositors and that method is still in use. The postal savings division of the United States Post Office uses finger-printing as a means of identification of its depositors. Since 1908 the Marine Corps and the army and navy have used finger-printing as a means of identification, and in 1910 the municipal civil service commission of the city of New York adopted finger-printing as a means of identification, so that to-day over 125,000 city employees have their finger-prints on file with the commission.

It may be that this applicant, having been in business a number of years and having actually obtained a license to do business, is well known to be of good character to the commissioner of licenses, but it is not practical for the commissioner to make one rule for one applicant and another for the balance, and for his protection and for the purpose of enabling him to decide on applications he must have one definite rule applicable to all. The petitioner claims that finger-printing is well known in criminal law and that it is only of recent origin, but the history of finger-printing would seem to dispose of that contention and the practice of finger-printing has come into general use as a means of identification and it can no longer be maintained that taking the finger-prints of a person stigmatizes him as a criminal because of its general use.

The claim of the petitioner that the taking of finger-prints is in violation of the spirit or purpose of the Constitution can no longer be maintained because we have judicial authority to the contrary. For the foregoing reasons the application is denied.