Kenneth E. Fidler, Plaintiff, *v.* Joseph A. Murphy, Defendant.
Douglas L. Fidler, Plaintiff, *v.* Joseph A. Murphy, Defendant.
George Wilmot, Plaintiff, *v.* Joseph A. Murphy, Defendant.
Fred A. Larkin, Plaintiff, *v.* Joseph A. Murphy, Defendant.
Nathan A. Broome, Plaintiff, *v.* Joseph A. Murphy, Defendant.
Harry Brinkerhoff, Plaintiff, *v.* Joseph A. Murphy, Defendant.

Supreme Court, Trial Term, Onondaga County, May 24, 1952.

*Nathaniel L. Goldstein, Attorney-General* (*Harold S. Coyne* of counsel), for defendant.

*Rolland B. Marvin* for plaintiffs.

Searl, J. A jury has awarded Kenneth Fidler, and each of his five employees, verdicts in each instance of $1,300. Defense counsel moves in each case to set the verdict aside (Civ. Prac. Act, § 549).

Plaintiff, Kenneth Fidler, was engaged in the trucking business in and about the city of Syracuse, New York. In the year

1949 he was carrying crushed stone from the Jamesville quarries, near Syracuse, to the new Binghamton airport, the stone to be turned into the construction of runways to be used by the Government.

The trucks, loaded at Jamesville, were accustomed to drive south through Onondaga County, then through Cortland County and, in turn, through Broome County to the airfield.

It is conceded that on August 31, 1949, these drivers were apprehended by defendant while conveying their loads southward and taken before a Justice of the Peace at Leyden, New York, charged with carrying an excessive weight of stone. It was likewise admitted that after arraignment a question arose as to the interpretation of the statute applicable to the claimed offense, and that it was agreed between the attorneys that the matter be held for a period of one month to enable plaintiffs' attorney to correspond with the Attorney-General and obtain a ruling on the applicability of the law.

After a lapse of a period of two weeks, five of the employees of Kenneth Fidler were again apprehended while entering Broome County going south with their loads. They asked permission to call their employer on the phone, which privilege was granted. Defendant, a lieutenant, and his assistants then requested the men to drive the loads upon portable scales which the officers provided. An argument arose as to whether some excess air should first be let out of the tires and upon this being refused the men said they were quitting their jobs. Thereupon the troopers shackled the men together and took them to the troopers' headquarters at Whitney Point.

The men were then taken upstairs to the room provided for taking fingerprints. They were photographed and finger-printed. In the meantime their employer, Kenneth Fidler, arrived. Some evidence was introduced to effect that he was jostled a bit after some argument with the defendant. In any event all six were then taken before a Justice of the Peace where $4,000 in cash was posted for their future appearance on a charge of "willfully resisting, delaying, or obstructing a public officer in discharging, or attempting to discharge, a duty of his office."

Following this arraignment the instant actions were commenced, no further proceedings were taken against the men, and the $4,000 remains posted.

Sections 552 and 940 of the Code of Criminal Procedure specify the particular offenses which permit of fingerprinting and photographing. Section 940 provides that "Members of the state police, upon arresting a person or persons for any

felony or any of the misdemeanors and offenses specified in section five hundred and fifty-two of this code, may transport and bring said persons arrested to their troop headquarters for the purpose of fingerprinting and thumbprinting and photographing ". Neither section 552 nor 940 provides for any such procedure where the accused is charged with the misdemeanor of resisting an officer.

The question now remains as to whether such fingerprinting or photographing in a case not provided for by law would constitute a cause of action for assault. In *Hawkins* v. *Kuhne* (153 App. Div. 216, affd. 208 N. Y. 555) where the plaintiff was photographed and fingerprinted before conviction, and subsequently discharged, the court held such procedure amounted to an assault.

In the instant case it cannot well be urged that because the defendant did not actually do the fingerprinting he can escape liability. It is a fundamental principle that every person concerned in the commission of a tort, or who counsels, commands, or orders another to commit it, is a principal, and liability follows.

The defendant, a conscientious gentleman in his pursuit of law enforcement, a proper ambition, apparently overlooked the provisions of the State Constitution (art. I, §§ 1, 6).

These provisions guaranteeing that a person shall not be deprived of any of his rights unless by the law of the land, or the judgment of his peers, are in the nature of a shield against any unwarranted interference with such rights by any department of government, executive, legislative, or judicial. (See *People ex rel. Gow* v. *Bingham,* 57 Misc. 66.) Furthermore the law requires the defendant be taken immediately before a magistrate (*Green* v. *Kennedy,* 48 N. Y. 653).

The fact that the photographer and fingerprint expert had been ordered the night before to be at the headquarters early the following morning indicated there was contemplated work to be done.

Defendant's motions for a new trial must be denied in each instance.