John THOM and R. J. Flynn, Plaintiffs,

v.

NEW YORK STOCK EXCHANGE, American Stock Exchange, Goldman, Sachs and Company, Shields and Company, and Louis Lefkowitz, individually and as Attorney General of the State of New York, Defendants.

Donald J. MILLER, Plaintiff,

v.

NEW YORK STOCK EXCHANGE, American Stock Exchange, Paine, Webber, Jackson and Curtis, and Louis Lefkowitz, individually and as Attorney General of the State of New York, Defendants.

Nos. 69 Civ. 4092, 4205.

United States District Court
S. D. New York.

Nov. 18, 1969.

Paul G. Chevigny, New York City, for plaintiffs.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant New York Stock Exchange; Andrew J. Connick, Adlai S. Hardin, Jr., Edward J. Hardin, New York City, of counsel.

Forsythe, McGovern, Pearson & Nash, New York City, for defendant American Stock Exchange; Gordon L. Nash, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Goldman, Sachs and Co., David S. Henkel, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Shields and Co.; Leonard Joseph, New York City, of counsel.

Beekman & Bogue, New York City, for defendant Paine, Webber, Jackson & Curtis; Milton Weiss, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, pro se; Samuel A. Hirshowitz, First Asst. Atty. Gen., Brenda Soloff, Asst. Atty. Gen., of counsel.

EDWARD WEINFELD, District Judge.

These are two actions wherein three plaintiffs challenge the constitutionality of New York State's recently enacted law, Chapter 1071, [1969] Laws of New York,[1] which requires all employees of member firms of national security exchanges registered with the Securities and Exchange Commission and employees of affiliated clearing corporations to be fingerprinted as a condition of employment. The plaintiffs are a lawyer, a computer programmer and an executive dining room employee, each employed by a different stock exchange firm. Named as defendants are these employers, the Attorney General of the State of New York and the New York and American Stock Exchanges.

The plaintiffs move for a preliminary injunction to enjoin the defendants from enforcing the statute, which became effective September 1, 1969, and for the convening of a three-judge court pursuant to 28 U.S.C., sections 2281, 2284. A temporary restraining order is in effect. The defendants move to dismiss the complaint for lack of jurisdiction over the subject matter and for failure to state a claim on which relief can be granted.

Plaintiffs contend that the statute is unconstitutional in that it constitutes: (1) an invasion of privacy in violation of the Ninth and Fourteenth Amendments; (2) an illegal search and seizure in violation of the Fourth Amendment; (3) punishment without due process of law in violation of the Fourteenth Amendment; and (4) an invidious and irrational discrimination against employees of member firms of national security exchanges, resulting in denial of equal protection of the laws in violation of the Fourteenth Amendment.

The single narrow issue on the motion for a three-judge court is whether

---

1. Codified at N.Y. General Business Law § 359–e(12) (McKinney's Consol.Laws, c. 20, Supp. 1969).

one or more of the constitutional claims are of substance and present a basis for equitable relief.[2] After careful consideration of the complaint and plaintiffs' contentions in support thereof, the Court concludes the questions presented lack the necessary constitutional substance, and accordingly denies the motion for a three-judge court and grants the defendants' motion to dismiss.

We first turn to the evils which gave rise to the statute and the means by which the state sought to meet them.[3] Chapter 1071 was enacted to meet problems that have bedeviled an industry and concerned the state—the year by year increase in stolen or lost securities. The evils of rising thefts in the securities industry have followed in the wake of a tremendous expansion in the daily volume of stock exchange transactions, resulting in an increase in the number of persons employed in the "back office" or clerical area. In 1967 the average daily transactions in the New York Stock Exchange alone totalled ten million shares a day; in 1968 the daily average was thirteen million shares, an increase of thirty per cent in one year. The volume of increase from 1963 to 1968 was seventy-five per cent. When the statute was passed in May 1969 it was estimated that the number of persons employed in the business was close to 50,000, with 6,000 employees added in 1968; that the yearly number of applicants for positions in the industry average about 10,000.

During the period of the expanded volume in transactions and the increase in personnel, the number of securities lost or stolen reached staggering amounts: whereas in 1966 the total amount of such securities was slightly over nine million dollars, in 1967 and again in 1968 the total of lost or stolen securities soared to thirty-seven million dollars. Hardly a day passed without the press carrying reports of the theft or disappearance of securities from brokerage houses, ofttimes running into the hundreds of thousands, and at times millions, of dollars. The depredations involved not only persons who had immediate access to the securities, but others who illicitly received and disposed of them.

Existing procedures to obtain background information of prospective employees in the industry had not proved altogether effective. SEC Rule 17a–3(a) (12)[4] requires most members (with limited exception) of registered exchanges to maintain extensive employee records, including arrests, indictments or convictions for all crimes except traffic offenses. The rule also applies to partners, officers, directors, managers and all persons handling funds or securities. A separate rule of the New York Stock Exchange requires its members and member organizations to verify and maintain employee records containing, among other matters: (1) a recent photograph; (2) a signature exemplar; and (3) the information required by SEC Rule 17a–3(a) (12) for three years after termination of employment.[5] Despite these regulations, theft of securities occurred involving employees with criminal records undisclosed at the time of their employment. Efforts by security industry representatives to exchange information with the Federal Bureau of Investigation, as authorized by 28 C.F.R. § 0.85 (1969), or to enlist the aid of the New York City Police Department in verifying the background information failed because of insufficient funds and inadequate personnel. The

---

2. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Ex Parte* Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

3. *See* DeVeau v. Braisted, 363 U.S. 144, 147, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

4. 17 C.F.R. § 240.17a–3(a)(12) (1969).

5. N.Y.S.E. Rule 345.19.

Legislature responded to the situation by enacting the statute, which provides:[6]

"All persons including partners, officers, directors and salesmen employed by a member or a member organization of a National Security Exchange, registered with the federal securities exchange commission and any employee of a clearing corporation affiliated with any such registered National Security Exchange employed on or after September first, nineteen hundred sixty-nine, who are regularly employed within the state of New York shall, as a condition of employment, be fingerprinted. Every set of fingerprints taken pursuant to this subdivision shall be promptly submitted to the attorney general for appropriate processing."

The Governor, in approving the bill, after noting the tremendous increase in the volume of securities transactions and the corresponding increase in the number of employees engaged in the securities industry in New York State, added:[7]

"It has been learned recently that several securities thefts from member organizations of registered national security exchanges have been perpetrated with the aid of new back office or clerical employees with previously undisclosed criminal records.

"The fingerprint checks required by this bill will significantly aid employers in the securities industry in evaluating prospective employees' qualifications for employment in an industry requiring the highest standards of integrity and in weeding out those with criminal backgrounds."

Thus, the legislation was designed to meet a specific and worsening problem in the securities industry. That the securities industry is a business affected with a public interest and that the state has a legitimate concern with the problem of ever-mounting thefts in the industry is not disputed.[8] And likewise not open to challenge is the state's power to take reasonable steps to prevent or reduce thefts, embezzlement and related crimes, and to combat the intrusion of criminal elements in the industry by providing a means of identification of persons with criminal backgrounds who work or apply for work in the industry.[9] Fingerprints have long been recognized as a scientific and accurate means of identification.[10] The statute provides a simple method for security industry employers confronted with the problem of shifting personnel and mounting crime to verify at slight inconvenience to employees and applicants for employment the information submitted by them. Upon its face, it appears reasonably calculated to meet the evils toward which it was directed without imposing any undue burden upon individuals, and consequently represents a valid exercise of the state's police power.[11]

Plaintiffs, however, dispute that the statute is a reasonable exercise of police

6. Law of May 26, 1969, ch. 1071, § 1, [1969] Laws of N.Y. (codified at N.Y. General Business Law § 359–e(12) (McKinney Supp.1969)).

7. 2 McKinney's 1969 Sess.Laws of N.Y. 2575, 2576 (Governor's memorandum approving the bill).

8. *Cf.* Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

9. *See* Staten Island Loaders, Inc. v. Waterfront Comm'n, 117 F.Supp. 308 (S.D.N.Y.1953), *aff'd per curiam*, 347 U.S. 439, 74 S.Ct. 623, 98 L.Ed. 826 (1954); Linehan v. Waterfront Comm'n, 116 F. Supp. 683 (S.D.N.Y.1953), *aff'd per curiam*, 347 U.S. 439, 74 S.Ct. 623, 98

L.Ed. 826 (1954); *cf.* DeVeau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

10. Stevenson v. United States, 127 U.S. App.D.C. 43, 380 F.2d 590, 592, *cert. denied*, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967); United States v. Kelly, 55 F.2d 67, 69, 83 A.L.R. 122 (2d Cir. 1932); Medias v. City of Indianapolis, 216 Ind. 155, 23 N.E.2d 590, 125 A.L.R. 590 (1939); Roesch v. Ferber, 48 N.J.Super. 231, 137 A.2d 61, 66 (1957).

11. Goldblatt v. Town of Hempstead, 369 U.S. 590, 594–596, 82 S.Ct. 987, 8 L.Ed. 2d 130 (1962).

power to regulate business; they say that the standards derived from cases involving economic interests are inapplicable here and cannot save the statute. Their separate claims that Chapter 1071 is void for invasion of privacy, denial of due process and unlawful search and seizure are interrelated, but the principal assault centers about the invasion of their right of privacy—the right not to be fingerprinted absent a criminal charge or other compelling state purpose. Plaintiffs argue that there is such a right of privacy in fingerprints; that fingerprints are a system of social control, of intrusion upon one's past and future life, and accordingly, that the state must show strong justification for such an intrusion, which they contend is here lacking.[12]

This claim of privacy rests principally upon *Davis v. Mississippi*.[13] In *Davis* the Supreme Court barred a "dragnet" fingerprinting of youths in an attempt to identify a rapist. Plaintiffs assert that *Davis* clearly establishes the right of privacy and that the right is not confined to criminal cases. Their assault upon the Act based upon *Davis* runs in many directions: that fingerprinting is an indignity to their person and privacy; that it constitutes "dragnet" fingerprinting, since without adequate standards it indiscriminately applies to all persons in the securities industry; that other and more effective means involving less intrusion upon individual privacy could have been devised by the state; that no provision is made for the return of the fingerprints after they have served their purpose.

Plaintiffs' essential reliance upon *Davis v. Mississippi* is misplaced. *Davis* was concerned with methods used in obtaining fingerprint evidence during the course of a criminal investigation.[14] It is but another application of the principle that the Fourth Amendment applies to all searches and seizures of the person no matter what the scope or duration.[15] It held that in the circumstances there presented the detention for the sole purpose of fingerprinting was in violation of the Fourth Amendment ban against unreasonable search and seizure. It is inapposite to the situation here presented. Similarly inapposite is *Griswold v. Connecticut*,[16] upon which plaintiffs also rely. The right of marital privacy at the core of the Court's ruling in *Griswold* is in no sense analogous to the instant claim of privacy.

Plaintiffs' contention that fingerprinting is an affront to their dignity and an invasion of their privacy is without substance. The day is long past when fingerprinting carried with it a stigma or any implication of criminality. Federal and state courts alike, in upholding fingerprinting requirements, have rejected any such view.[17] Our Court of Ap-

---

12. *Cf.* A. Westin, Privacy and Freedom 57–63 (1967).

13. 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969); *see* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

14. *See* Bynum v. United States, 104 U.S. App.D.C. 368, 262 F.2d 465 (1958).

15. *See* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

16. 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965).

17. *See* Stevenson v. United States, 127 U.S.App.D.C. 43, 380 F.2d 590, 594 n. 12, *cert. denied*, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967); United States v. Krapf, 285 F.2d 647 (3d Cir. 1961); Walton v. City of Atlanta, 181

F.2d 693 (5th Cir.), *cert. denied*, 340 U.S. 823, 71 S.Ct. 56, 95 L.Ed. 604 (1950) (fingerprinting of taxi drivers); United States v. Laub Baking Co., 283 F.Supp. 217 (N.D.Ohio 1968); United States v. New Orleans Chap., Assoc. Gen. Contractors, 238 F.Supp. 273, 278– 279 (E.D.La.1964), *rev'd on other grounds*, 382 U.S. 17, 86 S.Ct. 33, 15 L.Ed.2d 5 (1965); Sterling v. City of Oakland, 208 Cal.App.2d 1, 24 Cal.Rptr. 696 (1962); State *ex rel.* Mavity v. Tyndall, 224 Ind. 364, 66 N.E.2d 755 (1946); id. 225 Ind. 360, 74 N.E.2d 914 (1947), *appeal dismissed*, 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118, *rehearing denied*, 333 U.S. 858, 68 S.Ct. 732, 92 L.Ed. 1138 (1948); Medias v. City of Indianapolis, 216 Ind. 155, 23 N.E.2d 590, 125 A.L.R. 590 (1939) (pawnbrokers and second-

peals, almost forty years ago, in upholding the right of federal agents to take fingerprints after an arrest upon probable cause, even in the absence of statutory authority, observed, "Finger printing is used in numerous branches of business and of civil service, and is not in itself a badge of crime."[18] To the same effect is a state court's contemporaneous opinion upholding a regulation requiring fingerprinting for the issuance of a license to deal in secondhand articles.[19]

Fingerprinting in noncriminal contexts today is even more widespread. It is required of all employees of United States government agencies and departments.[20] As far back as 1910, the New York City Municipal Service Commission adopted fingerprinting as a means of identification, so that today there are thousands upon thousands of fingerprints of city employees on file with the Commission.[21] In Maine all school children must be fingerprinted.[22] In Pennsylvania all babies must be footprinted and mothers fingerprinted.[23] The extensive acceptance of fingerprinting throughout the country is illustrated by a random selection of federal and state statutes set

hand dealers required to keep and submit to police department cards with fingerprints of everyone from whom they receive or buy property) ; City of Wichita v. Wolkow, 110 Kan. 127, 202 P. 632 (1921) (pawnbrokers and second-hand dealers required to keep and submit to police department register with fingerprints of everyone from whom they receive or buy property) ; Norman v. City of Las Vegas, 64 Nev. 38, 177 P.2d 442 (1947) (fingerprinting of employees in establishments selling alcoholic beverages for on-premises consumption) ; Roesch v. Ferber, 48 N.J.Super. 231, 137 A.2d 61 (1957) ; Simone v. Kennedy, 26 Misc.2d 748, 212 N.Y.S.2d 838 (Spec. T.1961) (fingerprinting of employees in cabarets) ; Friedman v. Valentine, 177 Misc. 437, 30 N.Y.S.2d 891 (Sup.Ct. 1941), aff'd, 266 App.Div. 561, 42 N.Y.S. 2d 593 (1943) (fingerprinting of employees in cabarets) ; Bridges v. State, 247 Wis. 350, 19 N.W.2d 529, 539, rehearing denied, 247 Wis. 350, 19 N.W.2d 862 (1945) ; cf. United States v. Kalish, 271 F.Supp. 968 (D.P.R.1967) (objection based solely upon inclusion in criminal file).

18. United States v. Kelly, 55 F.2d 67, 70, 83 A.L.R. 122 (2d Cir. 1932).

19. M. Itzkowitz & Sons v. Geraghty, 139 Misc. 163, 247 N.Y.S. 703 (Spec.T.1931). A contrary conclusion was reached in two even earlier lower court cases in New York. Gow v. Bingham, 57 Misc. 66, 107 N.Y.S. 1011 (Spec.T.1907) (dictum) ; People v. Hevern, 127 Misc. 141, 215 N.Y.S. 412 (Mag.Ct.1926). See also Hawkins v. Kuhne, 153 App.Div. 216, 137 N.Y.S. 1090 (1912), aff'd, 208 N.Y. 555, 101 N.E. 1104 (1913) ; Fidler v. Murphy, 203 Misc. 51, 113 N.Y.S.2d 388 (Sup.Ct.1952) (fingerprinting in case not provided for by law constitutes cause of action for assault). But the dictum in the Gow case, which ultimately held only that petitioner had mistaken his remedy, may be read as indicating only that fingerprinting was a sufficient intrusion into personal liberty to require legislative authorization. Such authorization was subsequently provided in criminal cases, see N.Y.Code Crim.Proc. § 940 (McKinney Supp.1969), and is clearly granted by ch. 1071. Hevern declared unconstitutional a state statute requiring fingerprinting upon arrest, as a condition of bail, N.Y.Code Crim.Proc. § 552–a (McKinney Supp.1969), ruling that the fingerprinting involved (1) compulsory self-incrimination, and (2) an unlawful encroachment upon the person. The first ground is clearly wrong, see note 25 infra; as to the second, the court noted that although it felt fingerprinting at the time still conveyed "an imputation of crime," at some future time it might lose such association. That development has clearly taken place. In any event, the passage of time and the intervening developments in statutory and case law within and without New York, see note 17 supra; appendix, considerably weaken the impact of these early lower court decisions.

20. Executive Order No. 10450, 3 C.F.R. 936 (1949–53 Comp.).

21. New York City Civil Service Commission requires fingerprinting both prior to examinations and again upon appointment or promotion. N.Y.City Civ.Serv. Comm'n, Rules 4.4.3, 5.1.2. See M. Itzkowitz & Sons v. Geraghty, 139 Misc. 163, 247 N.Y.S. 703, 705 (Spec.T.1931).

22. Maine Rev.Stat.Ann., tit. 25, § 1548 (1965).

23. Pa.Stat.Ann., tit. 35, § 352 (1964).

out in the appendix to this opinion which authorize or require fingerprinting. In sum, the public has long recognized it as a valuable and reliable means of identification, and to suggest that a stigma attaches when it is so used is to fly in the face of reality.

Plaintiffs' further contention that fingerprinting is an unwarranted invasion of their personal liberty or privacy is equally unjustified. Plaintiffs do not challenge the right of inquiry into their private lives when employed or seeking employment by the stock exchanges and affiliated clearing houses under existing SEC and Exchange regulations.[24] They attack only the fingerprinting requirement. But fingerprinting under the statute is only a means of verifying the required information as to the existence or nonexistence of a prior criminal record. It involves no additional intrusion into the personal lives of employees and applicants. The submission of one's fingerprints is no more an invasion of privacy than the submission of one's photograph or signature to a prospective employer,[25] which the Stock Exchange rules still require. As the Supreme Court in *Davis* observed, "Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search."[26] The actual inconvenience is minor; the claimed indignity, nonexistent; detention, there is none; nor unlawful search; nor unlawful seizure.

Taking a somewhat different tack, plaintiffs acknowledge that even under *Davis,* in noncriminal situations, a statute could require fingerprinting of certain persons, if narrowly circumscribed by appropriate standards to protect privacy.[27] But they claim that the statute here is overbroad and as applied fails to meet required constitutional standards, for it indiscriminately requires all persons in the securities business, regardless of circumstances, to submit his fingerprints.

These three plaintiffs, a lawyer, a computer programmer and an executive kitchen employee, urge there is no rational basis for their inclusion in the fingerprinting requirement. But even employees in the securities business who have no direct access to securities may be in contact with fellow employees having direct or immediate access to or knowledge of the location of negotiable securities running into astronomical figures. Theft of securities may be accomplished not only by those who handle certificates in the "back room," but by other employees who are in a position to conceive, aid and abet the crime, or to "finger" the securities or to arrange for outsiders to receive and sell the stolen certificates. As to the lawyer's further contention that his good character was attested to when he was certified for admission to the bar,[28] the short answer is that it may be he "is well known to be of good character * * * but it is not

24. *See* SEC Rule 17a–3(a)(12), 17 C. F.R. § 240.17a–3(a) (12) (1969); NYSE Rule 345.19, discussed at p. 1005.

25. *See* Schmerber v. California, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed. 2d 908 (1966), where, even with respect to the privilege against self-incrimination, the Supreme Court observed: " * * * both federal and state courts have usually held that it [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *See also*

Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Lewis v. United States, 127 U.S. App.D.C. 269, 382 F.2d 817, *cert. denied,* 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967) (handwriting exemplar).

26. Davis v. Mississippi, 394 U.S. 721, 727, 89 S.Ct. 1394, 1398, 22 L.Ed.2d 676 (1969).

27. *Cf.* Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

28. It should be noted that admission to the bar involves many of the same pro-

practical * * * to make one rule for one applicant and another for the balance * * *." [29] And even if some individuals with little or no access to the securities must still be fingerprinted, this does not invalidate legislation if otherwise there is justification for the course adopted by the state.[30] "The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest." [31]

■ The plaintiffs next argue that the legislative purpose of reducing the crime potential could have been more effectively achieved by other means, such as an automated and centralized system of depositing shares so that the physical shares need not be transferred, and by other automated methods. Whatever the merits of these as yet untried proposals, the remedy to be applied to the evil rests with the Legislature and not with the courts.[32]

■ Plaintiffs urge us not to give such broad scope to legislative discretion, but carefully to scrutinize the alternatives open to the Legislature, for "[w]hen a regulatory statute is so broadly drawn or applied as to infringe on individual rights, and where there are alternative methods of regulation less restrictive of those rights, such a statute may be unconstitutional [citing cases in the First Amendment area]." However, as plaintiffs have failed to establish any significant invasion of a protected privacy interest, there is no justification for applying a "less retrictive alternatives" or other such stringent test ordinarily reserved for the "preferred" First Amendment rights.[33] Since the means adopted are reasonably related to the purposes sought to be achieved by the regulation, the legislative solution is beyond attack.

The plaintiffs next contend that the statute is vulnerable because no provision is made for the return or destruction of the fingerprints once they have served their purpose of verification. They argue that lack of such provision belies the stated purpose of the Act and reveals that its true purpose is (1) to use the fingerprints for continual surveillance of employees and to exclude from the securities industry persons deemed "undesirable," whether convicted of crime or not, and (2) to use the fingerprints for the de-

---

cedures plaintiff here finds objectionable. The New York State Board of Law Examiners requires a handwriting exemplar in the application for the bar examination. Rules of N.Y.State Bd.Law Examiners, Rule 1(c), N.Y.Codes, Rules & Regs., tit. 22, § 6000.1(c) (1969). The Committees on Character and Fitness of the Second Judicial Department in New York have a similar requirement for admission to the bar. *See* Application & Sworn Statement for Admission to the Bar, App.Div., 2d Dep't, Comms. on Character & Fitness, Quest. 13, N.Y. Codes, Rules & Regs., tit. 22, app. C–1 (1969). In the Second Department, applicants are also required to submit photographs and to be fingerprinted. *See also* Roesch v. Ferber, 48 N.J.Super. 231, 137 A.2d 61, 73 (1957) (fingerprints required of all candidates to New Jersey bar).

**29.** M. Itzkowitz & Sons v. Geraghty, 139 Misc. 163, 247 N.Y.S. 703, 705 (Spec.T. 1931).

**30.** *See* Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 82–83, 66 S.Ct 850, 90

L.Ed.2d 1096 (1946) ; Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 201–204, 33 S.Ct. 44, 57 L.Ed. 184 (1912) ; Otis v. Parker, 187 U.S. 606, 23 S.Ct. 168, 47 L.Ed. 323 (1903).

**31.** United States v. Kelly, 55 F.2d 67, 68 (2d Cir. 1932).

**32.** Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 66 S.Ct. 850 (1946) ; Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 33 S.Ct. 44 (1912) ; Staten Island Loaders, Inc. ·v. Waterfront Comm'n, 117 F.Supp. 308 (S.D.N.Y. 1953), *aff'd per curiam*, 347 U.S. 439, 74 S.Ct. 623, 98 L.Ed. 826 (1954).

**33.** Shelton v. Tucker, 364 U.S. 479, 488 n. 8, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) ; *see, e. g.*, NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ; Shelton v. Tucker, *supra*; Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) ; NAACP v. Alabama *ex rel.* Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

tection of crime, thereby running afoul of *Davis v. Mississippi*. The first claim, based on mere conjecture,[34] is frivolous. Possession of an individual's fingerprints does not create an atmosphere of general surveillance or indicate that they will be used for an impermissible purpose. Fingerprints provide a simple means of identification; no more.

■ The second claim is equally conjectural and untenable. In any case, the most plaintiffs can posit here is that the potential use of the prints for future criminal investigations is an additional unstated purpose of the law; that they will in fact be used for the stated purpose of initial investigation cannot seriously be questioned. Given such an admittedly valid purpose so clearly within the legislative competence, the circumstance of an incidental future by-product of fingerprinting does not invalidate the legislative act. Nor does that circumstance warrant a court ascribing to the Legislature a purpose different from the one that led to its enactment. As has been so aptly put: "Judicial inquiries into [legislative] motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed."[35]

And even if plaintiffs were to succeed in establishing that the state intended to incorporate these fingerprints into its central criminal identification files [36] to be used as a means of future crime detection, such a procedure does not run afoul of any constitutional prohibitions. As indicated above, the *Davis* case, so heavily relied upon, does not place any limitations upon the use of fingerprints properly obtained; it bars only unreasonable detentions for the purpose of obtaining such prints. Prints obtained in the course of criminal proceedings are routinely retained and used for future investigative purposes. Absent some statutory requirement of return or destruction upon acquittal,[37] or some prejudicial classification attached thereto,[38] there is no constitutional requirement that prints properly obtained be returned.[39] The state having presented a valid justification under its police power for the original taking of the prints under reasonable circumstances, their use for future identification purposes, even in criminal investigations, is not impermissible.[40] The decision as to whether prints lawfully obtained under the Act should be returned once they have served their purpose is a matter of legislative policy.

■ The plaintiffs' further claim that they are denied equal protection of the laws is patently frivolous. The con-

34. *Cf.* Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 84–85, 66 S.Ct. 850 (1946).

35. Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). *See also* Arizona v. California, 283 U.S. 423, 454–457, 51 S.Ct. 522, 75 L.Ed. 1154 (1931); Nigro v. United States, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600 (1928); United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493 (1919).

36. *See* N.Y.Exec.Law §§ 600–608 (McKinney Supp.1969); Miller, *Personal Privacy in the Computer Age: The Challenge of a New Technology in an Information-Oriented Society*, 67 Mich.L. Rev. 1091, 1191 (1969).

37. *See, e.g.*, N.Y.Code Crim.Proc. §§ 552–a, 944 (McKinney Supp.1969).

38. *See* United States v. Kalish, 271 F. Supp. 968 (D.P.R.1967).

39. Sterling v. City of Oakland, 208 Cal. App.2d 1, 24 Cal.Rptr. 696 (1962); Kolb v. O'Connor, 14 Ill.App.2d 81, 142 N.E.2d 818 (1957); State *ex rel.* Mavity v. Tyndall, 225 Ind. 360, 74 N.E.2d 914 (1947), *appeal dismissed*, 333 U.S. 834, 68 S.Ct. 609, 92 L.Ed. 1118, *rehearing denied*, 333 U.S. 858, 68 S.Ct. 732, 92 L.Ed. 1138 (1948); *cf.* Herschel v. Dyra, 365 F.2d 17 (7th Cir.), *cert. denied sub nom.* Herschel v. Wilson, 385 U.S. 973, 87 S.Ct. 513, 17 L.Ed. 2d 436 (1966). Campbell v. Adams, 206 Misc. 673, 133 N.Y.S.2d 876 (Spec.T. 1954), cited by plaintiffs, is not to the contrary. That case involved only interpretation of relevant New York statutes governing the taking and return of fingerprints.

40. *See* Stevenson v. United States, 127 U.S.App.D.C. 43, 380 F.2d 590, 593–594, *cert. denied*, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967).

tention is that employees in the securities business have been singled out for fingerprinting, whereas employees in other industries, such as banking, where embezzlement and theft are also rampant, are not required to be fingerprinted, and thus there is an invidious and irrational discrimination against securities industry employees. The mere statement of the contention requires its rejection. That other industries to which the Legislature has not applied the Act may present similar problems, if such be the fact, does not render it unconstitutional. The extension of the Act, if evils also exist in related industries, is a matter of legislative judgment and discretion. "If 'the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.' "[41]

■ In sum, the Act neither invades the right of privacy of plaintiffs, nor does it in any respect deprive them of their constitutional rights of due process or of the equal protection of the laws.

The motion for the convening of a statutory three-judge court is denied; the temporary restraining order is vacated; the defendants' motion to dismiss the complaint is granted.

APPENDIX: Selection of State and Federal Statutes Authorizing or Requiring Fingerprinting of Individuals in Noncriminal Contexts.

Conn.Gen.Stat. § 6–57 (1960) (unidentified dead bodies); id. § 14–44 (operators of public service motor vehicles); id §§ 29–29, 53–206 (applicants for permit to carry pistol, revolver or other dangerous weapon).

Del.Code Ann., tit. 21, § 2763 (1953) (taxicab drivers); id., tit. 24, § 1313 (Supp.1968) (employees of licensed private detectives).

Fla.Stat. ch. 210.15(1)(e) (1967) (wholesale dealers and exporters of cigarettes); id. ch. 245.06 (unclaimed dead bodies); id. ch. 447.04(2)(a) (labor union business agents); id. ch. 493.42(2)(a) (10) ("detection of deception examiners," i. e. polygraph operators); id. ch. 550.181(2) (holders of racing permits and their employees); id. ch. 561.17(1) (manufacturers, dealers, distributors, etc. of alcoholic beverages).

Hawaii Rev.Laws § 32–8 (1957) (voluntary identification cards); id. § 160–43 (alternative thumbprint or photograph on drivers' licenses).

Ill.Rev.Stat., ch. 114, § 353 (1967) (licensed lessors of safe deposit boxes).

Iowa Code § 249.14 (1962) (alternative form of indorsement on old-age assistance warrants).

Md.Code Ann. art. 66½, § 89(c) (1967) (school bus and public common carrier drivers).

Mass.Laws Ann. ch. 140, §§ 122, 131 (1965) (licensees for sale, rental, lease, repair or carrying of firearms).

Mich.Comp.Laws §§ 28.271, 28.272 (1948) (voluntary request for fingerprinting to be complied with; separate noncriminal filing system to be maintained); id. § 28.426 (Supp.1961) (licensees to carry concealed weapon); id. § 431.41 (Supp.1961) (all persons connected with horse racing); id. § 445.472 (Supp.1961) (pawnbrokers, second-hand and junk dealers to take fingerprints of individuals from whom they purchase or acquire goods).

Minn.Stat. § 326.333(3) (1961) (licensed private detectives and protective agents).

N.J.Stat.Ann. §§ 2A:151–35, 2A:151–44 (Supp.1969) (permit holders for purchase of firearm or carrying of pistol or revolver); id. § 17:15A–3 (check-cashing licensees and every person directly

---

41. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 400, 57 S.Ct. 578, 585, 81 L.Ed. 703 (1937); see Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Gundling v. Chicago, 177 U.S. 183, 188, 20 S.Ct. 633, 44 L.Ed. 725 (1900).

connected with them); *id.* §§ 18A–39–17 to –19 (1968) (school bus drivers); *id.* § 45:19–16 (1963) (employees of licensed private detectives).

N.Y.Alcoholic Bev.Control Law §§ 103 (6), 104(9) (McKinney's Consol.Laws, c. 3–B, Supp.1969) (employees of alcoholic beverage manufacturers and wholesalers); N.Y.General Business Law §§ 72, 81 (McKinney's Consol.Laws, c. 20, 1968) (licensed private investigators, watch, guard and patrol agencies and their employees); N.Y.Unconsol.Laws § 8010(1) (McKinney Supp.1969) (participants and employees at harness race meets); *id.* § 8911(2) (McKinney 1961) (professional boxers and wrestlers, and referees, judges, matchmakers, timekeepers, box office employees, ticket takers, doormen, ushers, managers, trainers, seconds, announcers and special policemen at professional boxing or wrestling matches).

Okla.Stat. § 941 (1961) (corpse subject to examination after violent or suspicious death, or death relating to disease which might constitute public health hazard).

Pa.Stat.Ann. tit. 4, § 30.315 (1963) (promoters, representative managers, fighters, seconds, trainers, timekeepers, referees, judges, announcers, physicians, booking agents, matchmakers or managers at professional boxing or wrestling matches); *id.* tit. 22, §§ 14, 23 (licensed private detectives and their employees).

Vt.Stat.Ann., tit. 20, § 2020 (1968) (voluntary fingerprinting; separate non-criminal files to be maintained); *id.* tit. 31, § 603 (Supp.1969) (all individuals working in connection with horse races, including grooms, jockeys and drivers).

8 U.S.C. §§ 1201(b), 1301–1304, 1306 (1964) (registration and fingerprinting of aliens); 7 U.S.C. § 2044(a) (1964) (farm labor contractors); 26 U.S.C. § 5814 (1964) (certain transferees of firearms).

Uniform Reciprocal Enforcement of Support Act § 11 (petitioner may attach fingerprints of respondent in complaint to aid in identification).