OPINION OF THE COURT
Bentley Kassal, J.
This is a case of first impression, testing the validity of the requirement that all prospective grand jurors be fingerprinted. This special proceeding is instituted by the County Clerk of New York County, to punish the respondent for contempt, pursuant to section 751 of the Judiciary Law, for her refusal to submit to fingerprinting as a prospective grand juror, pursuant to article 16 of the Judiciary Law. Respondent, represented by the New York Civil Liberties Union, has moved to dismiss the petition pursuant to CPLR 404 (subd [a]), based upon "an objection in point of law”.
FACTS
Respondent was subpoenaed to appear at the juror’s division of this court on March 22, 1978 for examination as to her qualifications for prospective service as a grand juror in New York County. She agreed to comply with all the other requirements to qualify as a grand juror, including answering the jury qualification questionnaire, as required by section 513 of the Judiciary Law, objecting only to the required fingerprinting. Her position is that the fingerprinting requirement of *1061 section 514 of the Judiciary Law and of 22 NYCRR 620.6 (eff Feb. 22, 1978) constitutes an improper invasion of privacy and denial of equal protection of the law.
STATUTORY BASIS FOR FINGERPRINTING PROSPECTIVE GRAND
JURORS
The authorization and requirement for fingerprinting prospective grand jurors previously applied only in the City of New York, pursuant to former section 609 of the Judiciary law (L 1967, ch 680, § 83), when such service was voluntary. That authorization was made State-wide when the Judiciary Law was amended, effective January 1, 1978, to provide, in relevant part: "The commissioner of jurors may require the fingerprinting of all persons drawn for grand jury service.” (Judiciary Law, § 514.)
22 NYCRR 620.6 (pursuant to the rule-making authority provided by section 522 of the Judiciary Law) states:
"620.6 Grand jury list.
"(a) No person shall be selected to serve as a grand juror unless he has previously been qualified as a petit juror and has been interviewed and ñngerprinted in the office of the county clerk. * * *
"(b) If the juror is found otherwise available for grand jury service, his ñngerprint record shall be forwarded to the Division of Criminal Justice Services of the State of New York, Identiñcation and Information Services, for checking against the record of that department.
"(c) On the basis of the interview and fingerprint check, the county clerk shall maintain records of the persons who have appeared at his office for interview and fingerprinting, which records shall contain the names of those found available to serve as grand jurors and the names of those found disqualified or unavailable because of other jury service or rejected, exempted or excused, with the reasons therefor, and shall submit such data to the county jury board.” (Emphasis added.)
Additional statutory support with regard to juror qualification, though not specifically dealing with fingerprinting, is found in section 510 of the Judiciary Law, which requires, as a condition for jury service, that a person must:
"4. Not have been convicted of a felony.
"5. Be intelligent, of good character”.
*1062 RATIONALE FOR FINGERPRINTING REQUIREMENT
Although a search of the relevant legislative documents reveals no statement of the legislative intent behind the fingerprinting requirement, the petitioner’s affidavit offers the following reasons, inter alia, in support of its necessity and propriety:
"Confidentiality of grand jury proceedings is the most important reason for fingerprinting grand jurors.
"Premature disclosure of grand jury proceedings can result in defendants fleeing the jurisdiction before a warrant for their arrest can be issued; can cause serious harm to the reputations of accused persons who are not indicted; and, in some cases, the threat of or actual harm to witnesses whose testimony is critical for the prosecution of certain defendants. * * *
"To lessen the chance of premature disclosure of grand jury proceedings it is necessary to carefully screen persons selected as grand jurors so as to prevent ex-felons and persons of questionable character from sitting as grand jurors.
"Part of the screening process involves the filling out of a questionnaire by each prospective grand juror and an interview by a member of the staff of the Office of the County Clerk.
"One of the questions asked of prospective jurors is whether they have ever been convicted of a crime. One purpose served by this question is the disclosure of prior felony convictions. It also serves to disclose whether a person has been convicted of a crime involving lying, fraud or moral turpitude.
"The only reliable method of verification of the existence or non-existence of a prior criminal conviction is by fingerprint check. For this reason the fingerprints of prospective grand jurors are forwarded to the New York Police Department and to the New York State Identification and Intelligence System (N. Y. S. I. I. S.) for a check of prior convictions.
"Past experience has shown that a not insignificant number of persons who state under oath that they have never been convicted of a crime have, in fact, been convicted of crimes, both misdemeanors and felonies.
"During 1978 alone, of several thousand persons interviewed for grand jury service, 285 persons who stated under oath that they had never been convicted of a crime, had, in fact, been so convicted. Fifteen of these persons were found to *1063 have prior felony convictions, at least one of whom was convicted under another name.
"Without the verification provided by the fingerprint check it would be difficult to screen out persons with criminal records. Despite the knowledge that a fingerprint check will be made, 285 persons have falsely sworn that they did not have a prior criminal record. This number would be appreciably higher if fingerprinting was not required.
"The confidentiality of grand jury proceedings would be seriously impaired if persons willing to falsely swear were permitted to serve.”
ISSUES
In order to determine whether the respondent’s refusal to be fingerprinted should be punishable as contempt the court must decide whether (1) the fingerprinting requirement itself is unconstitutional, as respondent contends, (a) as an unnecessary invasion of privacy under the Fourth and Fourteenth Amendments and (b) as a denial of equal protection of law under the Fourteenth Amendment; and (2) whether the maintenance and unrestricted use of the fingerprint records by the County Clerk and the criminal justice agencies, after the checks have been completed, constitutes a further invasion of privacy.
INVASION OF PRIVACY IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
The essence of respondent’s argument is that under the present rules of mandatory Grand Jury service, the requirement that a potential grand juror be fingerprinted, under penalty of contempt, constitutes an illegal search and seizure in violation of the Fourth Amendment of the United States Constitution as applied to the States under the Fourteenth Amendment.
In support of this position respondent quotes the following language from the Supreme Court opinion in Davis v Mississippi (394 US 721, 726-727):
"Investigatory seizures would subject unlimited numbers of persons to the harassment and ignominy incident to involuntary detention. * * *
"Detentions for the sole purpose of obtaining fingerprints *1064 are no less subject to the constraints of the Fourth Amendment.”
Initially, it is clear that the fingerprint procedure here employed is distinguishable and far less intrusive that the fact pattern in Davis v Mississippi (supra) where the fingerprinting was merely one part of a broad dragnet criminal investigation whereby the defendant was illegally arrested and detained, without warrant or probable cause. Both the majority and the concurring opinions clearly indicate that the holding was limited to the extreme facts in that case and should not be read to indicate that the Fourth Amendment prohibited the government from compelling a citizen to submit to fingerprinting without a warrant or probable cause under other appropriate and reasonable circumstances. (Davis v Mississippi, supra, pp 727-729.)
Respondent also cites Schmerber v California (384 US 757, 767) to support her position, to the effect that: "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State.”
Again, it is manifest that the Fourth Amendment does not preclude all intrusions by the State into an individual’s "personal privacy or dignity”, but only such intrusions as are "unwarranted” or "unreasonable” in terms of the basis for the information sought and the method employed to obtain it. As stated in Elkins v United States (364 US 206, 222), "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures”. (Emphasis added.)
The test of reasonableness is a balancing test which weighs the interest of society in obtaining the information sought by the intrusion against the individual’s interest in his personal privacy and security. (See Terry v Ohio, 392 US 1, 26-27.) It also balances the privacy rights of those who are Grand Jury witnesses against those of the prospective grand jurors (cf. Davis v Alaska, 415 US 308).
However, assuming for the purposes of this application that the combination of the three elements here involved — the subpoena, the fingerprinting and the penalty of contempt— bring this procedure within the search and seizure proscriptions of the Fourth Amendment, it cannot be said that such procedures are unreasonable in view of the overriding public purposes stated by petitioner.
The security of Grand Jury proceedings, as well as the *1065 equally important rights of witnesses appearing before the Grand Jury, dictates that grand jurors be carefully screened. The qualifications for Grand Jury service, in article 16 of the Judiciary Law and the juror qualification questionnaire adopted by the Legislature in section 513 of the Judiciary Law, provide some guarantees of Grand Jury security. But, it is clear from the undisputed factual allegations in petitioner’s affidavit that they are not sufficient.
The use of fingerprint searches has already revealed a significant number of potential grand jurors who have falsely sworn that they had no prior criminal record. In addition, the existence of the fingerprint check has apparently had a prophylactic effect by encouraging truthful answers to the juror questionnaire. It is to be noted that the respondent does not challenge the efficacy or efficiency of the fingerprint check although she does suggest that other substitute measures might be equally effective. However, irrespective of whether or not this is the case, the appropriate remedy in that regard is legislative, not judicial.
These factors must be weighed against respondent’s claims of violation of her rights of privacy. In this area, respondent’s affidavit claims:
"[Fingerprinting makes me feel as if I am in the same category as those who have committed crimes or those who are under suspicion. * * *
"I find fingerprinting a psychological and physical handling of me by the State which is insulting, intrusive and offensive. The entire procedure of inking my hands, and being handled by someone I do not know is very troubling to me * * * I feel demeaned by the whole process”.
To the degree that respondent or some others may find the procedure offensive, it is unfortunate, but the realities of a modern urban society of mobile citizens have made certain governmental procedures both justifiable and acceptable to the general population. Respondent’s position was carefully scrutinized by Judge Weinfeld in his opinion in Thom v New York Stock Exch. (306 F Supp 1002, affd sub nom. Miller v New York Stock Exch., 425 F2d 1074, cert den 398 US 905.) Judge Weinfeld’s conclusion is sound, inescapable and logically controlling:
"The day is long past when fingerprinting carried with it a stigma or any implication of criminality. Federal and state courts alike, in upholding fingerprinting requirements, have *1066 rejected any such view. Our Court of Appeals, almost forty years ago, in upholding the right of federal agents to take fingerprints after an arrest upon probable cause, even in the absence of statutory authority, observed, 'Finger printing is used in numerous branches of business and of civil service, and is not in itself a badge of crime.’ * * *
"Fingerprinting in noncriminal contexts today is even more widespread”. (Thom v New York Stock Exch., 306 F Supp 1002, 1007-1008, supra; citing examples.)
As to the degree of the intrusion, it is equally clear that "fingerprinting under the statute is only a means of verifying the required information as to the existence or nonexistence of a prior criminal record. It involves no additional intrusion * * * As the Supreme Court in Davis observed, 'Fingerprinting involves none of the probing into an individual’s private life and thoughts that marks an interrogation or search.’ The actual inconvenience is minor; the claimed indignity, nonexistent; detention, there is none; nor unlawful search; nor unlawful seizure.” (Thom v New York Stock Exch., supra, p 1009.)
However, it should not be inferred that the requirement for fingerprinting exists only in a few isolated instances; in fact, the contrary is true in that they are widespread. Judge Weinfeld, in the Thom case (supra; p 1012), sets forth a lengthy and comprehensive appendix of some of the numerous State and Federal statutes authorizing or requiring fingerprinting of individuals in noncriminal contexts. Among some of those in the State of New York, inter alia, are: (1) employees of alcoholic beverage manufacturers and wholesalers; (2) employees of licensed private investigators and security agencies; (3) employees of harness race meets; (4) professional boxers and wrestlers, including referees, ticket takers, ushers, seconds, announcers, matchmakers and special policemen; (5) employees hired by the State of New York and New York City Civil Service Commission.
I, therefore, conclude that the arguments in favor of fingerprinting greatly outweigh those presented by respondent against it and the respondent’s claim that the procedure violates her Fourth Amendment rights must be rejected.
DENIAL OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT
Respondent’s argument in this regard is by far the *1067 shortest and is totally unsupported by any decisional authority. In substance, respondent contends that both petit jurors and witnesses are asked under oath whether they have committed crimes but are not fingerprinted and even defendants who are acquitted of crimes have their fingerprint records expunged. Respondent concludes that since misstatements by these groups have as serious consequences as misstatements by potential grand jurors, there is improper discrimination in requiring the fingerprinting of potential grand jurors.
Respondent’s equal protection argument has no merit. The legislation is not unconstitutional merely because it does not include other similarly situated classes of persons. Whether the Legislature should expand the scope of the fingerprinting requirement to include these classifications is within its judgment and discretion and the failure to include all other possible groups does not render unconstitutional an otherwise proper legislative requirement. The fingerprinting requirement has enabled petitioner to screen out a significant number of persons with prior convictions from the list of qualified grand jurors. This is sufficient to show that the requirement is fulfilling its purpose; it is not necessarily invalid simply because it might be required of other people in other circumstances. (Thom v New York Stock Exch., 306 F Supp 1002, supra.)
RETENTION OF FINGERPRINT RECORDS
This issue, as to the retention of the fingerprint records after check has been completed, presents a question distinct from that raised by the initial taking of the fingerprints. This is because the test of the propriety of a particular governmental invasion of a citizen’s personal security and privacy is "a dual one — whether the * * * action was justified in its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” (Terry v Ohio, 392 US 1, 20, supra; see, also, People v Stewart, 41 NY2d 65, 66.)
The standards of retention, similar to those for taking fingerprints, is a balancing test, pitting the individual’s right of privacy against the interests of the State in retaining the information. (See, generally, Terry v Ohio, supra; Roe v Wade, 410 US 113, 154-155; Matter of A & M, 61 AD2d 426, 433.) As stated by the Court of Appeals, Third Circuit, in Paton v La Prade (524 F2d 862, 868): "Determination of the propriety of *1068 an order directing expungement involves a balancing of interests; the harm caused to an individual by the existence of any records must be weighed against the utility to the Government of their maintenance.” (Citations omitted.)
As determined, the fingerprinting procedure under the relevant statutes and rules previously described serves a valid purpose in obtaining vital information as to the qualifications of prospective grand jurors. As such, it is both legislatively authorized and constitutionally permissible. On the other hand, the petitioner has offered no express legislative policy nor stated any rationale why such records should be retained once they have served their stated function.
I find that interests of the respondent in limiting the use of the fingerprint records come within the constitutionally protected rights of privacy. (See, generally, Griswold, v Connecticut, 381 US 479; Roe v Wade, supra; Warren and Brandeis, The Right of Privacy, 4 Harv L Rev 193.)
The balance clearly favors the privacy rights of potential grand jurors, and the fingerprint records, once they have served their stated purpose, should be expunged or returned to the individuals. (Paton v La Prade, supra; United States v Kalish, 271 F Supp 968; Chastain v Kelley, 510 F2d 1232.)
DECISION
Thus, it is this court’s decision that there is a sound basis and justification for the requirement that all prospective grand jurors be fingerprinted in that the need therefor is real, reasonable and credible. However, under the existing procedure, the individual’s right to privacy is being invaded to an improper and unnecessary extent since, once the fingerprints have been taken and checked against other files, there is no sound public policy served by their retention by the Commissioner of Jurors or the State of New York. It is essential that such intrusion on personal privacy be carefully monitored and limited to an absolute minimum.
In order to properly safeguard the individual’s constitutional rights, the procedures established for fingerprinting should be accompanied by the right to the return of such prints when no longer needed. The existing system does not and it thus fails to protect the very valuable prerogatives insuring privacy.
Indeed, a person exonerated of a criminal charge has the *1069 right to have his fingerprints expunged from all official records. The reasons are all the more compelling here since the obligation to serve is now mandatory as distinguished from various other areas where fingerprinting is voluntarily undertaken.
It is basic that unless there be a clear and proper legislative policy requiring universal registration or other similar identification, this rule may not be promulgated by any other governmental agency. Clearly, the establishment of these procedures, without providing for the return of fingerprints upon demand, is one step towards universality of such records. I am expressing no opinion as to the wisdom or desirability of such a policy other than to declare that the Commissioner of Jurors/County Clerk does not have the power to take steps leading toward such a result in this very sensitive policy making area.
There is no claim or evidence that the respondent intended to be disrespectful or contemptuous in refusing to appear for fingerprinting. Rather, upon advice of counsel and upon the acquiescence of the County Clerk, she was attempting to test the validity of the fingerprinting procedures. Since I have determined that those procedures unnecessarily invade respondent’s right of privacy, the application to punish respondent for contempt is denied and the petition is dismissed without prejudice to again subpoenaing respondent to qualify as a grand juror at some future date after the following procedures shall have been established by the petitioner: (1) All fingerprints transmitted to any governmental agency for verification shall be accompanied by instructions that no record of such fingerprints shall be retained by the verifying source unless a copy of such prints are already on file; and (2) An option shall be given to prospective jurors by a written notice so that he may elect to have the record of his fingerprints made available for return to him.
At such time that the said safeguards have been instituted, if respondent thereupon refuses to comply with the procedures, as so modified, petitioner may renew this application.