**SERVICE MACHINE & SHIPBUILDING CORP. et al.**

v.

**Edwin W. EDWARDS et al.**

**Civ. A. No. 78–1556.**

United States District Court,
W. D. Louisiana,
Lafayette Division.

Feb. 13, 1979.

---

M. David Gelfand, R. James Kellogg, New Orleans, La., for Forest Reubin and Southern Mut. Help Ass'n.

Andrew Reed, Aycock, Horne, Caldwell, Coleman & Duncan, Morgan City, La., for Service Mach. & Shipbuilding Corp.

Bernard E. Boudreaux, Jr., Bauer, Darnall, McNulty & Boudreaux, Franklin, La., for Chester C. Baudoin, Sheriff, St. Mary Parish.

Anthony J. Guarisco, Jr., Morgan City, La., for Edwin Edwards, Governor of Louisiana.

Michael J. Aloise, Jr., Morgan City, La., for Robert Stoute, Identification officer for St. Mary Parish.

Edward M. Leonard, Jr., Morgan City, La., for St. Mary Parish Police Jury.

J. Marvin Montgomery, Asst. Atty. Gen., Baton Rouge, La., for William J. Guste, Jr., Atty. Gen., State of La.

## MEMORANDUM OPINION

DAVIS, District Judge.

### STATEMENT OF THE CASE

Plaintiffs sued to declare invalid and enjoin enforcement of a workers' registration ordinance enacted by the St. Mary Parish Police Jury. Plaintiff Service Machine & Shipbuilding Corporation is an employer and plaintiff Forest Reubin is a potential employee.

### FACTS

Pursuant to authority granted by a state enabling act,[1] the St. Mary Parish Police Jury enacted a worker registration ordinance,[2] which is the subject of the constitutional attack in this suit.

During the past 10 years, St. Mary Parish has experienced both the advantages and disadvantages of rapid population growth which resulted from the development of the offshore oil and gas industry. The St. Mary Parish Police Jury believed that the large number of transient workers attracted to

this labor-hungry industry contributed significantly to its crime problems. The members of the police jury viewed the crime rate of their parish as higher than the crime rate of neighboring parishes.[3]

In an attempt to reduce its crime rate, the St. Mary Parish Police Jury enacted Ordinance 837.

### THE ORDINANCE

Ordinance 837 mandates that employers require certain workers to obtain a worker's registration card as a condition of employment. In order to obtain a registration card, the job applicant must register with a licensed franchisee, complete a questionnaire, be fingerprinted and photographed and pay up to $10 as a registration fee. The job applicants subject to the ordinance are: 1) all persons who travel into the parish to seek employment and 2) all current workers who seek to change employment.

The ordinance apparently does not require registration and custody of a registration card by an individual: 1) who is currently employed in St. Mary Parish and does not seek to change his employment; 2) who remains unemployed; 3) who was a resident of St. Mary Parish and unemployed on the effective date of the ordinance and who seeks to obtain employment in St. Mary Parish for the first time; and 4) who is self-employed.

### THE CONSTITUTIONAL GROUNDS FOR THE ATTACK ON THE ORDINANCE

Plaintiffs urge that the ordinance impermissibly infringes on rights secured under the United States Constitution in the following respects: 1) violates the commerce clause (Article 1, § 8); 2) represents an impermissible levy of duties on imports or exports (Article 1, § 10); 3) violates plaintiffs' right to travel guaranteed by the due

---

1. The state enabling act is appended as Appendix A.

2. The ordinance is appended as Appendix B.

3. For example, the crime rate of St. Mary Parish during the year 1977 was 3,633.0/100,000

while the crime rate of adjoining Iberia Parish, which was similar in population size and proximity to the coast. was 1,948.7/100,000. Louisiana Commission on Law Enforcement, *Crime in Louisiana 1977* (1978).

process clause of the fourteenth amendment and other provisions of the United States Constitution; 4) violates plaintiffs' right of privacy guaranteed by the due process clause of the fourteenth amendment and other provisions of the United States Constitution; 5) violates rights guaranteed to plaintiff Reubin and other members of his class by the equal protection clause of the fourteenth amendment; 6) violates guarantees against unreasonable search and seizure granted by the fourth amendment; 7) violates an employee's fifth amendment right not to be compelled to be a witness against himself.

## RIGHT TO PRIVACY

Plaintiff Reubin contends that the mandated disclosure of fingerprints, photographs, addresses for the past five years, names and addresses of relatives and other information required on the application deprives plaintiff of privacy guaranteed to him by the United States Constitution.

The threshold question to be considered is whether the information which the ordinance requires plaintiff to disclose is the type information which is within the zone of privacy protected by the due process clause of the Constitution.

The two aspects of the protected right to privacy were set forth by the Supreme Court in *Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977) as follows:

4. It is only after a determination that the information required to be divulged is within the scope of the protected privacy zone that we reach the standard of scrutiny to be applied to plaintiffs' claims. In *Plante v. Gonzales*, 575 F.2d 1119 (5th Cir. 1978), the court held that detailed financial information required to be disclosed did not fall within the "autonomy" branch of the right to privacy although the disclosure had an indirect effect on intimate decisions. Despite the court's finding of an indirect effect on this branch of plaintiff's right to privacy, the court in its analysis found no need to choose the appropriate standard of review.

5. *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) [names of persons for whom Schedule II drugs were prescribed]; *Nixon v.*

The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions. (footnotes deleted).

Plaintiffs' complaints focus on the first aspect of the right to privacy—avoiding disclosure of personal matters.[4]

The landmark cases dealing with the confidentiality branch of the right of privacy have involved dissemination of information which in every sense is much more sensitive and personal than the information required to be divulged by Ordinance 837.[5]

The Supreme Court in *Paul v. Davis*,[6] held that a police official had no liability under 42 U.S.C. § 1983 for disseminating information relating to plaintiff's arrest record for shoplifting. The Court seemed to hold that the individual's right to privacy was not violated by the dissemination of this type information.[7]

In *Thom v. New York Stock Exchange*, 306 F.Supp. 1002 (S.D. N.Y. 1969), *aff'd per curiam sub nom. Miller v. New York Stock Exchange*, 425 F.2d 1074 (2d Cir. 1970), the Second Circuit affirmed the district court dismissal of an action challenging a New York statute that required the fingerprinting of all employees of the New York Stock Exchange. The district court stated:

*Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) [personal diaries and tapes of personal family conversations belonging to former President Nixon]; *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) [names of persons who obtain abortions]; *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978) [names of persons patronizing massage parlors]; *Plante v. Gonzales*, 575 F.2d 1119 (5th Cir. 1978) [financial affairs of public officials].

6. 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

7. *But see Utz v. Cullinane*, 172 U.S.App.D.C. 67, 520 F.2d 467 (1975).

The submission of one's fingerprints is no more an invasion of privacy than the submission of one's photograph or signature to a prospective employer, which the Stock Exchange rules still require. As the Supreme Court in *Davis* observed 'Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search.' The actual inconvenience is minor; the claimed indignity, non-existent; detention, there is none; nor unlawful search; nor unlawful seizure.

306 F.Supp. 1009 (footnotes omitted).[8]

I conclude that none of the information required to be divulged by the ordinance can be characterized as sensitive personal information. The vast bulk of the information—name, address, identity of close relatives—is divulged numerous times during the course of the average individual's lifetime. This information is normally divulged when one enters primary school, high school and college; when one is married and on many employment applications.

Plaintiff Reubin argues that a job applicant, by divulging prior addresses, is subject to possible future embarrassment if the job applicant has a criminal record or has been confined in a mental institution. Plaintiff also argues that the address of a parent or other relative may reflect confinement in a prison or mental institution. Plaintiff also argues that the completed application may reveal that: 1) the applicant is illegitimate (if the father's identity is unknown or if the father's name is different from that of the mother), or 2) that the applicant and his wife are separated (if the response on the application reflects an address which is different for the wife than the applicant).

The court, in *Plante*,[9] considered a similar question when it was argued that compliance with the financial disclosure statute could reveal memberships, associations and beliefs. The court disposed of this argument as follows:

> Although in some particular situations, rigorous application of the Amendment might implicate first amendment freedoms, when considering the Amendment on its face, this threat is too remote to raise the issue.

575 F.2d at 1132-33.

█ I conclude that the information required to be divulged by Ordinance 837 is not the sensitive, personal type information entitled to protection under the Constitution.

In the event, however, that a reviewing court should disagree with my conclusion, it is in order that I make further findings with respect to the scrutiny which should be applied to plaintiffs' claims.

In view of the minimal anticipated impact which the required disclosure will have on the plaintiffs, I conclude that the most stringent review test which should be applied to this claim is the intermediate test applied in *Plante*.[10]

> The constitutionality of the amendment will be determined by comparing the interests it serves with those it hinders.

575 F.2d 1119, 1134.

The parish police jury reasoned that: 1) St. Mary Parish had a serious crime problem. I conclude that the governing body was justified in its belief.[11] 2) The large

---

**8.** *See also* the district court opinion at page 1008 in which the court documents the widespread practice of fingerprinting as a means of identification of school children and babies and a random selection of federal and state statutes which authorize or require fingerprinting.

No case has been cited in which a statute requiring fingerprinting has been declared unconstitutional. On the other hand, several courts have upheld such statutes in the face of constitutional attacks. See *Thom v. New York Stock Exchange*, [fingerprinting of persons employed by or doing business with the Ex-

change]; *Walton v. City of Atlanta*, 181 F.2d 693 (5th Cir. 1950) [fingerprinting of taxicab drivers]; *People v. Stuller*, 10 Cal.App.3d 582, 89 Cal.Rptr. 158 (4th Dist. 1970) [fingerprinting of workers connected with the tourist industry].

**9.** *See* note 4, *supra*.

**10.** *See* note 4, *supra*.

**11.** Whether St. Mary Parish's crime rate was disproportionate to the other parishes in the state is not necessarily relevant. It is apparent

transient population contributed to the crime problem. Hard evidence on this question is difficult to produce. I am unable to characterize as unreasonable the belief of the governing body that the large influx of young, highly mobile, unskilled men contributed to the parish's crime problem. 3) The nature and quantity of the labor force required by the oil industry attracted an inordinate number of fugitives from other jurisdictions who committed a disproportionate amount of crime in relation to the population in general.[12]

The parties stipulated that the purpose of the ordinance was to "reduce the rate of crime in the parish by deterring suspects who are wanted in other jurisdictions from moving into the parish to work and to assist in the detection of persons who have committed crimes in the parish." [13]

The parish officials take the position that a fugitive will be deterred from moving into St. Mary Parish because of his reluctance to be fingerprinted and that this will reduce the number of fugitives in the parish and consequently assist in the reduction of the crime rate. Moreover, the defendants argue that if a crime is committed by an individual about whom nothing is known and who perhaps has given an alias to his employer, it is very difficult to trace and apprehend that suspect when he flees. The defendants contend that if a fingerprint of the suspect is available for processing through FBI and other police records, vital information can be obtained to assist in identifying and apprehending the suspect.

■ There is no hard evidence that the objectives of the police jury will be realized. By enacting Ordinance 837, the police jury is trying a new approach to aid in the control of its crime problem. They believe the ordinance will deter fugitives from entering the area and expect the information gathered will assist in identifying and ap-

prehending criminals. The question is whether the policy jury properly exercised its discretion in the exercise of its police power. The Court, in *Whalen v. Roe*, stated:

> State legislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part. For we have frequently recognized that individual States have broad latitude in experimenting with possible solutions to problems of vital local concern.
>
> The New York statute challenged in this case represents a considered attempt to deal with such problems. It is manifestly the product of an orderly and rational legislative decision. It was recommended by a specially appointed commission which held extensive hearings on the proposed legislation and drew on experience with similar programs in other states. There surely was nothing unreasonable in the assumption that the patient-identification requirement might aid in the enforcement of laws designed to minimize the misuse of dangerous drugs. For the requirement could reasonably be expected to have a deterrent effect on potential violators as well as to aid in the detection or investigation of specific instances of apparent abuse. At the very least, it would seem clear that the State's vital interest in controlling the distribution of dangerous drugs would support a decision to experiment with new techniques for control. For if an experiment fails—if in this case experience teaches that the patient identification requirement results in the foolish expenditure of funds to acquire a mountain of useless information—the legislative process remains available to terminate the unwise experiment. It follows that the legislature's enactment of the

that St. Mary Parish has a significant crime problem; *see* note 3, *supra*.

**12.** I am convinced from the testimony of FBI Special Agent Tom Colarelli that St. Mary Parish attracted more than its share of fugitives.

Whether fugitives are more prone to commit crime than the population in general is probably impossible to prove or disprove. I am unable to say that an affirmative opinion on this question by a legislative body is unreasonable.

**13.** Pretrial stipulation 5(e).

patient-identification requirement was a reasonable exercise of New York's broad police powers. The district court's finding that the necessity for the requirement had not been proved is not, therefore, a sufficient reason for holding the statutory requirement unconstitutional.

429 U.S. 589, 597–98, 97 S.Ct. 869, 875 (1977). (footnotes omitted).

Applying the balance test, I conclude that: 1) the potential for inconvenience and embarrassment to the individual job applicant is minimal; 2) the interest of the state and parish in controlling crime is compelling; 3) the police jury was justified in believing that its registration scheme would aid in the control of crime.

RIGHT TO TRAVEL AND EQUAL PROTECTION OF LAW

Although Ordinance 837 applies to all job applicants who travel into St. Mary Parish, it also applies to most residents of the parish who apply for employment. The only job applicants not burdened with the registration requirements are residents seeking their first job. Thus, the facts presented here are clearly distinguishable from the classic "right to travel" cases where only those persons who exercised their constitutional right to travel were affected by the laws in question.[14]

The test of whether or not a right to travel issue exists is not merely whether the legislation in question will deter non-residents from entering the area. Any restrictive legislation that applies to all who live in an area may deter non-residents from entering the area if the outsiders do not wish to become subject to the restriction.

With one minor exception, the ordinance is directed to all persons—residents and non-residents—applying for and beginning employment in St. Mary Parish.

■ If the fact that all non-resident and only some resident job applicants are subject to the ordinance presents a "right to travel" issue, I conclude that the police jury had a rational basis for its choice of the class to be reached by this ordinance. The police jury could have rationally concluded that registering and fingerprinting persons subject to the ordinance would deter fugitives from entering St. Mary Parish and would assist in the apprehension of members of their highly mobile labor force suspected of committing crimes. The police jury may well have concluded that but for the highly mobile nature of its labor force the information contained in the registration forms would be available to law enforcement authorities from relatives, neighbors and other contacts in a more stable society.[15]

Plaintiffs make a further argument based upon the statutory interpretation of the enabling act and Ordinance 837.

Plaintiffs point to the fact that the enabling act authorizes the parish governing authority to enact a system of identification and registration of *itinerant workers.* The enabling act does not define itinerant workers. The ordinance defines itinerant laborers or employees as being "any persons who travel into the Parish of St. Mary after the effective date of this ordinance to seek employment or to be employed in this parish. Itinerant laborers are also persons gainfully

---

14. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

15. No explanation is offered by the parish for excluding from application of this ordinance residents in the parish who apply for their first job. It may be that the parish governing authority considered that the number of persons included in this exception was so small and that residents applying for their first job had

sufficient roots in the parish to obviate the necessity of subjecting them to the requirements of the ordinance. I conclude that this minor exception does not render the class invalid. The law is clear that the class need not be perfect or mathematically precise and that the legislation need not attack all evils at once. *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); and *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

employed in the Parish of St. Mary who seek to change employment after the effective date of this ordinance."

Plaintiffs argue that the St. Mary Parish Police Jury impermissibly broadened the definition of itinerant laborers to include some laborers who are residents of St. Mary Parish and that the only persons the parish governing authority could properly make subject to the registration requirements within the authority granted by the enabling act were itinerants and that itinerants are by definition non-residents.

The dictionary definition of itinerant is: Itinerant (adj.)—that travels about from place to place (an agricultural worker, a theatrical troupe) esp. that travels about in covering a circuit (a preacher); (noun) —one that travels about from place to place; esp. one that travels about in covering a circuit.

*Webster's Third New International Dictionary* 1203 (1961).

I conclude that it is unnecessary to decide whether the St. Mary Parish Police Jury was restricted, under the terms of the enabling act, to reaching only non-residents with Ordinance 837. I reached this conclusion because under my interpretation of *Shapiro v. Thompson*[16] and *Sosna v. Iowa*[17] no constitutionally protected right to travel or equal protection violation is presented even if the ordinance, because of the limitation in the enabling act, can only reach job applicants who travel into St. Mary Parish.

In *Shapiro*, the Supreme Court struck down a one-year residency requirement placed on eligibility for welfare benefits. The Court found that the waiting period created two classes of needy families—those in residence for more than one year and those in residence for less than that time. The Court concluded that this classification was unjustified and infringed upon the short-term residents' right to travel. Because the waiting period touched on the fundamental right of interstate movement and could not be shown to promote a compelling state interest, the requirement violated the Equal Protection Clause.[18]

In *Sosna*, the Court failed to apply that same strict scrutiny test to a one-year residency requirement for obtaining a divorce. Although the Court seemed to recognize that this waiting period did burden the right to travel, *Shapiro* and its progeny were distinguished because the benefits there were "irretrievably foreclosed" while Mrs. Sosna could obtain her divorce if she waited a year.[19] The Court apparently concluded that the budgetary and record-keeping justifications offered in *Shapiro* were inadequate but that the state's interest in protecting its judgments from collateral attack and in requiring a close nexus between the state and the party obtaining the divorce were sufficient to uphold this very similar waiting period.

The situation at hand is more closely analogous to that of the *Sosna* case. Here, the parish requires registration of those who come in; this is far from the harsh penalty imposed on the plaintiffs in *Shapiro*. The parish's interests in keeping out fugitives and in solving crimes are clearly more important than the justifications offered in *Shapiro*. Applying the type of balancing evidenced in *Sosna* and some low-

16. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

17. 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1974).

18. The Court was careful to point out that not every residency requirement should fall:

We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel.

394 U.S. at 638, n. 21, 89 S.Ct. at 1333.

Further support for the view that a lesser impact on the right to travel might not trigger strict scrutiny is found in *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

19. Actually, the plaintiffs in *Shapiro* could obtain welfare after waiting a year also but presumably the hardships to them during the year were greater than those facing Mrs. Sosna.

er court cases [20] to these facts reveals that the parish's interests far outweigh the potential detriment which may be experienced by job applicants.

## INTERSTATE COMMERCE

■ Plaintiffs also attack the ordinance on the ground that it unduly restricts the free movement of labor in interstate commerce. The ordinance does not discriminate against the free movement of labor in interstate commerce; most resident job applicants are required to comply with the ordinance to the same extent as job applicants who travel into the parish. The ordinance does have an effect on interstate commerce, however, insofar as it applies to those who travel into the parish.

Because the ordinance does affect commerce, its validity must be judged in terms of the test set forth in *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). The infringement must be rationally related to a legitimate state interest and the burden on commerce must be outweighed by the interest of the parish in enforcing the ordinance.

I have concluded, as discussed earlier, that the registration requirement is rationally related to the parish's legitimate interest in controlling its crime problem. Registration imposes a minimal burden on interstate commerce of labor, a burden which is far outweighed by the parish's goal of better crime control. The minimal burden on interstate commerce is reasonable, does not exceed the state's regulatory power and does not violate the Constitution.[21]

## PLAINTIFFS' REMAINING CLAIMS

Plaintiffs, relying on *Davis v. Mississippi*,[22] assert a violation of the fourth amendment which protects against unreasonable search and seizure.

In *Davis*, the defendant was illegally detained. During the illegal detention, a fingerprint was taken which was used in the prosecution of defendant for the same crime for which he was illegally arrested.

Plaintiffs' reliance on *Davis* is misplaced. *Davis* simply stands for the proposition that a fingerprint obtained as a product of an illegal detention cannot be used as evidence in a subsequent criminal prosecution on the charge for which defendant was illegally detained.

■ Plaintiffs' claim that the ordinance violates their fourth amendment rights is rejected.[23]

■ Plaintiffs' asserted violation of fifth amendment rights is also without merit.

It is clear that the taking of identifying characteristics such as fingerprints or handwriting exemplars are outside the constitutional protection of the fifth amendment.[24]

■ Plaintiffs' constitutional attacks premised on violation of privileges and immunities [25] and impermissible levy of a duty [26] are also rejected.

---

**20.** Lesser scrutiny, because of the less severe restriction on the right to travel, was also used in the following cases and has not been disapproved by the Supreme Court; *see Spatt v. New York*, 361 F.Supp. 1048 (E.D.N.Y.1973), *aff'd mem.*, 414 U.S. 1058, 94 S.Ct. 563, 38 L.Ed.2d 465 (1973) and *Starns v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), *aff'd mem.*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

**21.** The factual context of *Edwards v. California*, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941) relied upon by plaintiffs is inapposite here. The law in question there prohibited the transport of indigents into California; the ordinance here at issue does not prohibit any entry into the parish, it merely requires some of those who enter to register.

**22.** 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

**23.** *See Thom v. New York Stock Exchange*, 306 F.Supp. at 1009.

**24.** *People v. Stuller*, 10 Cal.App.3d 582, 89 Cal. Rptr. 158 (1970) and *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

**25.** Analysis of the privileges and immunities claim involves the same factors as analysis of the ordinance in terms of the right to travel and the commerce clause. *See* the text at notes 14-21, *supra*.

**26.** The balancing test used to determine the existence of an undue burden on interstate

CONCLUSION

For the above reasons, plaintiffs' demands for injunction and declaratory judgment are denied.

In view of my conclusion that the ordinance does not violate the rights secured to plaintiffs under the United States Constitution, I do not consider plaintiffs' claims under the constitution and law of Louisiana.

## APPENDIX A

## IDENTIFICATION AND REGISTRATION OF ITINERANT WORKERS

### ACT NO. 795

### HOUSE BILL NO. 1587

**An Act to amend Section 1236 of Title 33 of the Louisiana Revised Statutes of 1950 by adding thereto a new Paragraph, to be designated as Paragraph (41) thereof, to authorize the governing authority of the parishes of St. Mary, Cameron, Vermilion, Iberia, Assumption, Terrebonne and Lafourche to adopt ordinances providing for a system of identification and registration of itinerant workers, prohibiting any employer from employing any itinerant worker who is not properly identified and regis-**

### 1978 REGULAR SESSION

**tered, including penalties applicable to employers, and to provide for related matters. Notice of intention to introduce this Act has been published as provided by Article III, Section 13 of the Constitution of Louisiana.**

*Be it enacted by the Legislature of Louisiana:*

Section 1. Paragraph (41) of Section 1236 of Title 33 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:

### § 1236. Powers of police jury

The police juries and other parish governing authorities shall have the following powers:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(41) The governing authority of the parishes of St. Mary, Cameron, Vermilion, Iberia, Assumption, Terrebonne and Lafourche may adopt ordinances providing for a system of identification and registration of itinerant workers, prohibiting any employer from employing any itinerant worker who is not properly identified and registered, including penalties applicable to employers for violations of such ordinances.

Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items, or applications of this Act which can be given effect without the invalid provisions, items, or applications, and to this end the provisions of this Act are hereby declared severable.

Section 3. This Act shall become effective upon signature of the governor, or if not signed by the governor, upon expiration of the time for bills to be-

commerce is also applied to determine the permissibility of an ordinance such as this under the import-export clause. *See* the text at notes 20-21, *supra.*

**1210**

come effective without signature of the governor as provided in Article III, Section 18 of the constitution.

Section 4. All laws or parts of laws in conflict herewith are hereby repealed.

Approved July 17, 1978.

---

## APPENDIX B

### ORDINANCE NO. 837.

An Ordinance to require all persons, firms, corporations, institutions, and public bodies employing itinerant laborers in this Parish, to obtain identification information including picture and fingerprints of all laborers employed by them, to furnish application information, fingerprints, and pictures to the St. Mary Parish Police Jury for information purposes, and to provide penalties for violation of same.

### SECTION 1: DEFINITIONS:

Employers as used herein shall mean all persons, firms corporations, labor contractors, institutions and public bodies in the Parish of St. Mary who employs the services of another and for whom employers work and receive wages or salaries.

Itinerant laborers or employees are any persons who travel into the Parish of St. Mary, after the effective date of this ordinance, to seek employment or to be employed in this Parish. Itinerant laborers are also persons gainfully employed in the Parish of St. Mary who seek to change employment after the effective date of this ordinance.

### SECTION 2:

Except as provided in Section 3 hereof, all employers who employ itinerant laborers shall require, prior to employment, that such laborer complete an application-identification form to be furnished by the St. Mary Parish Police Jury, which shall include photograph and fingerprints of the laborer.

### SECTION 3:

Employers shall issue to employees hired by them, an identification card, which shall contain the name, address and fingerprint of such employee, said identification cards to be furnished by the St. Mary Parish Police Jury. Once an employee has been issued an identification card in compliance with the foregoing, such employee need not reapply upon changing jobs; the presentation of this card to prospective employers shall constitute authority for employers to hire such employees without the necessity of completing the application-identification forms provided for in Section 2 hereof.

### SECTION 4:

Employers shall forward to the St. Mary Parish Police Jury, Courthouse, Franklin, Louisiana, all completed application cards, fingerprint cards, and pictures of employees, on a weekly basis, and shall indicate thereon which applicants were actually hired by the employer.

### SECTION 5:

The St. Mary Parish Police Jury shall make available to the Sheriff of St. Mary Parish, all such identification forms, fingerprint cards, and pictures of employees for further identification.

### SECTION 6:

It shall be unlawful for any person who has been issued an identification card, to transfer such card to another, or to falsify any of the information contained thereon or in the application therefor.

### SECTION 7:

The Police Jury of St. Mary Parish, Louisiana shall employ persons to complete ap-

plication forms, fingerprint cards, and issue identification cards to laborers. A fee of not more than $10.00 shall be charged for each application so completed. Nothing contained herein shall prevent employers from completing the applications and submitting same to the Police Jury as provided herein.

### SECTION 8:

The Police Jury shall establish an office for the administration and enforcement of this ordinance, and may prescribe forms to be completed, identification cards to be issued and records to be maintained.

### SECTION 9:

Nothing contained herein shall be construed as a denial of employment by the Police Jury of St. Mary Parish, the Sheriff or other law enforcement agency of St. Mary Parish; nor shall any provision of this ordinance be construed as permission for an employer to deny employment to anyone because of race, sex, ancestry, religion or national origin.

### SECTION 10:

Any person, firm, corporation, labor contractor, institution or public body violating the provisions of this Ordinance shall be guilty of a misdemeanor and upon conviction by a Court of competent jurisdiction shall be fined a minimum of $25.00 and a maximum of $100.00 or imprisonment at the discretion of the Court. Each separate violation of the provisions of this Ordinance shall constitute a separate offense subject to said penalties.

### SECTION 11:

In case of any one or more of the provisions of this ordinance shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provisions of said ordinance, but the same shall be construed and enforced as if such illegal or invalid provisions had not been contained herein. Any constitutional or statutory provision enacted after the date of this ordinance which validates or makes legal any provision hereof shall be deemed to apply hereto.

### ST. MARY PARISH
### ITINERANT LABOR IDENTIFICATION OFFICE

IDENTIFICATION NO. _____

1. _____
NAME (Last) (First) (Middle)

(a) _____
Nicknames or aliases

2. _____
Present Address (Not P. O. Box or General Delivery)

(a) _____ (b) _____ (c) _____
Home Telephone No. Business Telephone No. Social Security No.

3. Former residences for last five (5) years:

| From — To Year | Address | City, State |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

4. Sex 5. Race 6. Height 7. Weight 8. Eye Color _____

___ Female ___ White ___ Ft. ___ In. ___ Lbs. Hair Color _____

___ Male ___ Other

1212

9. Name of Spouse: _____

 Address of Spouse: _____

10. Last place of Employment: Company Name: _____

 (a) _____ Address: _____
 Occupation

11. | | NAME | ADDRESS |
 |---|---|---|
 | Father | | |
 | Mother | | |
 | Sister | | |
 | Brother | | |

12. Date of Birth _____ 13. Driver's License No. _____

 13. (a) State Issued: _____

14. Are you a registered voter? _____ If yes, State of Registration. _____

Date _____ _____
 Signature of Applicant

 • • •

NAME OF COMPANY ISSUING IDENTIFICATION CARD: _____

ATTACH PHOTOGRAPH OF APPLICANT HERE