**SERVICE MACHINE & SHIPBUILDING CORP. et al., Plaintiffs-Appellants,**

v.

**Edwin W. EDWARDS et al., Defendants-Appellees.**

**No. 79–1520.**

United States Court of Appeals, Fifth Circuit.

May 12, 1980.

Am. Civil Liberties Union Foundation of La., Inc., School of Law, M. David Gelfand, New Orleans, La., Aycock, Horne, Caldwell, Coleman & Suncan, Andrew Reed, Morgan City, La., Howell, Kellogg & Bayer, R. James Kellogg, George Strickler, New Orleans, La., for Service Machine, Southern Mutual Help Assn. & Forest Reuben.

J. Marvin Montgomery, Asst. Atty. Gen., Baton Rouge, La., for Guste & Edwards.

Anthony J. Guarisco, Michael Aloise, Jr., Morgan City, La., for Robert Stoute.

Sanford Jay Rosen, San Francisco, Cal., amicus curiae, for National Council of Churches of Christ in U.S., et al.

Vilma S. Martinez, San Francisco, Cal., amicus curiae, for Mexican Am. Legal Defense & Educational Fund, Inc.

Morris J. Baller, San Francisco, Cal., David A. Maestas, Washington, D. C., amicus curiae, for National Council of La Raza, Inc.

Edward M. Leonard, Jr., Morgan City, La., amicus curiae, for St. Mary Parish Police Jury & Police Jurors Individually.

Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD,* District Judge.

TJOFLAT, Circuit Judge:

This appeal calls into question the constitutionality of the St. Mary Parish, Louisiana worker registration ordinance. In the proceedings below, the district court upheld the ordinance and refused to enjoin the registration system the ordinance established. 466 F.Supp. 1200 (W.D.La.1979). A panel of this court granted an injunction pending appeal, requiring that all registration under the system cease, and this expedited appeal followed.

I

St. Mary Parish has experienced rapid population growth as a result of the development of the offshore oil and gas industry, and large numbers of transient workers have been attracted to the area by the employment opportunities. The St. Mary Parish Police Jury believed that the transient laborers contributed significantly to the local crime rate. In an effort to alleviate the crime problem, the Parish Police Jury, pursuant to the authority granted by 33 La.Rev.Stat.Ann. § 1236(41) (West Supp. 1980),[1] adopted Ordinance No. 837,[2] which established the worker registration system here under constitutional attack.

* District Judge of the Northern District of Alabama, sitting by designation.

1. Section 1236(41) provides:

The governing authority of the parishes of St. Mary, Cameron, Vermilion, Iberia, Assumption, Terrebonne and Lafourche may adopt ordinances providing for a system of identification and registration of itinerant workers, prohibiting any employer from employing any itinerant worker who is not properly identified and registered, including penalties applicable to employers for violations of such ordinances.

2. Ordinance No. 837 provides:

An Ordinance to require all persons, firms, corporations, institutions, and public bodies employing itinerant laborers in this Parish, to obtain identification information including picture and fingerprints of all laborers employed by them, to furnish application information, fingerprints, and pictures to the St. Mary Parish Police Jury for information purposes, and to provide penalties for violation of same.

SECTION 1: *DEFINITIONS*:

Employers as used herein shall mean all persons, firms corporations, labor contractors, institutions and public bodies in the Parish of St. Mary who employs the services of another and for whom employers [sic] work and receive wages or salaries.

Itinerant laborers or employees are any persons who travel into the Parish of St. Mary, after the effective date of this ordinance, to seek employment or to be employed in this Parish. Itinerant laborers are also persons gainfully employed in the Parish of St. Mary who seek to change employment after the effective date of this ordinance.

SECTION 2:

Except as provided in Section 3 hereof, all employers who employ itinerant laborers shall require, prior to employment, that such laborer complete an application-identification form to be furnished by the St. Mary Parish Police Jury, which shall include photograph and fingerprints of the laborer.

SECTION 3:

Employers shall issue to employees hired by them, an identification card, which shall contain the name, address and fingerprint of such employee, said identification cards to be furnished by the St. Mary Parish Police Jury. Once an employee has been issued an identification card in compliance with the foregoing, such employee need not reapply upon changing jobs; the presentation of this card to prospective employers shall constitute authority for employers to hire such employees

The ordinance was designed to provide for the identification and registration of itinerant laborers seeking employment within St. Mary Parish. "Itinerant laborers" are defined as (1) those who travel into St. Mary Parish seeking employment and (2) those gainfully employed in the parish who seek to change employment. All employers of itinerant laborers are to have each of them, prior to employment, complete an application-identification form that requires the photograph and fingerprints of the laborer. The employer then *must* furnish this information to the Parish Police Jury. Any employer who violates the ordinance is subject to fine or imprisonment. The ordinance authorizes licensees to issue these application forms and identification cards for a fee not to exceed ten dollars. The evidence indicates that the ten dollar fee was universally charged by the licensees.

Service Machine & Shipbuilding Corporation is an employer subject to the ordinance, and Forest Rubin, another appellant, is a potential employee within the parish. They contend in this appeal that the ordinance and the registration system impermissibly infringe on various constitutional rights: (1) the right to travel; (2) the right to work and change jobs; (3) the right of privacy; (4) the equal protection of the laws; (5) the due process of law; and (6) rights secured under the commerce clause. Because we hold that the St. Mary Parish Ordinance and worker registration system violate the commerce clause, we need not address the merits of the other grounds advanced by the appellants.

## II

In dismissing the contention that the ordinance violates the commerce clause, U.S.

without the necessity of completing the application-identification forms provided for in Section 2 hereof.
SECTION 4:
Employers shall forward to the St. Mary Parish Police Jury, Courthouse, Franklin, Louisiana, all completed application cards, fingerprint cards, and pictures of employees, on a weekly basis, and shall indicate thereon which applicants were actually hired by the employer.
SECTION 5:
The St. Mary Parish Police Jury shall make available to the Sheriff of St. Mary Parish, all such identification forms, fingerprint cards, and pictures of employees for further identification.
SECTION 6:
It shall be unlawful for any person who has been issued an identification card, to transfer such card to another, or to falsify any of the information contained thereon or in the application therefor.
SECTION 7:
The Police Jury of St. Mary Parish, Louisiana shall employ persons to complete application forms, fingerprint cards, and issue identification cards to laborers. A fee of not more than $10.00 shall be charged for each application so completed. Nothing contained herein shall prevent employers from completing the applications and submitting same to the Police Jury as provided herein.
SECTION 8:
The Police Jury shall establish an office for the administration and enforcement of this ordinance, and may prescribe forms to be completed, identification cards to be issued and records to be maintained.
SECTION 9:
Nothing contained herein shall be construed as a denial of employment by the Police Jury of St. Mary Parish, the Sheriff or other law enforcement agency of St. Mary Parish; nor shall any provision of this ordinance be construed as permission for an employer to deny employment to anyone because of race, sex, ancestry, religion or national origin.
SECTION 10:
Any person, firm, corporation, labor contractor, institution or public body violating the provisions of this Ordinance shall be guilty of a misdemeanor and upon conviction by a Court of competent jurisdiction shall be fined a minimum of $25.00 and a maximum of $100.00 or imprisonment at the discretion of the Court. Each separate violation of the provisions of this Ordinance shall constitute a separate offense subject to said penalties.
SECTION 11:
In case of any one or more of the provisions of this ordinance shall for any reason be held to be illegal or invalid, such illegality or invalidity shall not affect any other provisions of said ordinance, but the same shall be construed and enforced as if such illegal or invalid provision had not been contained herein. Any constitutional or statutory provision enacted after the date of this ordinance which validates or makes legal any provision hereof shall be deemed to apply hereto.

Const. art. I, § 8, cl. 3, the district court first held that the ordinance did not discriminate between parish and non-parish job applicants, since most resident job applicants were required to comply with the ordinance to the same extent as job applicants who traveled into the parish. The court recognized, however, that the ordinance affected interstate commerce insofar as it applied to those who traveled into the parish. Because the ordinance impaired interstate commerce, the court applied the test of *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945), and determined that the infringement was rationally related to the legitimate parish interest in controlling crime, and that the minimal burden on interstate commerce was far outweighed by this legitimate interest. 466 F.Supp. at 1208. In light of more recent Supreme Court pronouncements on the applicable standard for reviewing state or local laws that burden interstate commerce, we reverse.

▪ The commerce clause grants to Congress the power to regulate interstate and foreign commerce. This affirmative grant necessarily imposes corresponding limitations on the powers of states to regulate areas where Congress has assumed primary responsibility, *A & P Tea Co. v. Cottrell*, 424 U.S. 366, 370–71, 96 S.Ct. 923, 927, 47 L.Ed.2d 55 (1976), but does not preclude every state law that affects interstate commerce. *H.P. Hood & Sons, Inc. v. DuMond*, 336 U.S. 525, 531–32, 69 S.Ct. 657, 661–62, 93 L.Ed. 865 (1949). "[I]n areas where activities of legitimate local concern overlap with the national interests expressed by the Commerce Clause—where local and national powers are concurrent—the Court in the absence of congressional guidance is called upon to make 'delicate adjustment of the conflicting state and federal claims' . . ." *A & P Tea Co. v. Cottrell*, 424 U.S. at 371, 96 S.Ct. at 928, quoting *H.P. Hood & Sons, Inc.*, 336 U.S. at 553, 69 S.Ct. at 679 (Black, J., dissenting). Congress has not preempted state and local laws in the area of crime control. Thus, this court must examine the challenged ordinance to determine whether the measures taken by St. Mary Parish run afoul of the commerce clause's "overriding requirement of a national 'common market.'" *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977).

▪ The movement of persons falls within the protection of the commerce clause, *Edwards v. California*, 314 U.S. 160, 172, 62 S.Ct. 164, 166, 86 L.Ed. 119 (1941), so the ordinance must be subjected to scrutiny under the commerce clause. In addition, a challenged law need not be a state statute to violate the commerce clause. A local ordinance can also create an unlawful infringement on interstate commerce. *See Dean Milk Co. v. Madison*, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951).

▪ The appropriate standard for assaying a local law affecting interstate commerce was most recently stated in *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed. 250 (1979):

> Under that general rule we must inquire (1) whether the challenged statute regulates evenhandedly with only "incidental" effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect; (2) whether the statute serves a legitimate local purpose; and, if so, (3) whether alternative means could promote this local purpose as well without discriminating against interstate commerce. The burden to show discrimination rests on the party challenging the validity of the statute, but "[w]hen discrimination against commerce . . . is demonstrated, the burden falls on the State to justify it both in terms of the local benefits flowing from the statute and the unavailability of nondiscriminatory alternatives adequate to preserve the local interests at stake." *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 353, 97 S.Ct. 2434, 2446, 53 L.Ed.2d 383 (1977).

441 U.S. at 336, 99 S.Ct. at 1736. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ Our first task, then, is to determine whether the ordinance regulates evenhandedly, or discriminates against interstate commerce. The type of discrimination that has been the focus of the Supreme Court's analysis occurs when a state or local law distinguishes between commerce originating within a state and commerce originating outside the state. Most often this discrimination takes the form of economic protectionism, and the Court has consistently held this type of parochial legislation constitutionally invalid. *See, e. g., City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978); *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); *Baldwin v. G.A.F. Seelig*, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032 (1935). The Court also has struck down state attempts to accord its own residents a preferred right of access over nonresidents to resources located within its borders. *See, e. g., Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed. 250; *Pennsylvania v. West Virginia*, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). Prohibited discrimination has been found even when a statute on its face does not distinguish between in-state and out-of-state commerce, but in practical effect, nevertheless, favors resident over nonresident producers. *See Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed. 383 (1977).

As the preceding cases indicate, the Supreme Court has found discrimination under laws that favor residents vis-a-vis nonresidents, where there is no reason, apart from origin, to treat them differently. Here, Ordinance No. 837 discriminates against interstate commerce. Although the ordinance at first glance appears to require registration of all seeking employment, both resident and nonresident, it does facially discriminate in favor of local residents in one important respect. The ordinance does not mandate that an employer require registration of resident job applicants seeking their first jobs, although an employer must require such registration of nonresidents seeking their first employment.

Since the ordinance discriminates against interstate commerce, the burden falls on the parish to justify the ordinance both in terms of local benefits arising from the ordinance and the unavailability of nondiscriminatory alternatives that would adequately preserve the local interests at stake. *Hughes v. Oklahoma*, 441 U.S. at 335, 99 S.Ct. at 1736. This burden can be very heavy at times, arising nearly to a per se invalidation where the local measure is motivated by economic protectionism. *See City of Philadelphia v. New Jersey*, 437 U.S. at 623, 98 S.Ct. at 2535. St. Mary Parish has advanced its interest in the deterrence and detection of crime as justification for the ordinance. This interest does not appear to be merely a guise for economic protectionism, so we do not consider a per se invalidation of the ordinance appropriate. Instead, because the ordinance facially discriminates against interstate commerce, we must hold the parish to a high standard of justification for the ordinance. St. Mary Parish has not met that burden.

While the parish's interest in the deterrence and detection of crime is a legitimate local interest, an assertion of a permissible local interest is not a talisman. A court must look instead to the benefits that are claimed to flow from the challenged local law. *See Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 791–92, 54 L.Ed.2d 664 (1978). Even laws purporting to protect the public health and safety have been found constitutionally infirm where the asserted benefits were found, upon close examination, to be tenuous. *See id.* at 442–445, 98 S.Ct. at 795–96 (highway safety regulations not justified); *Hunt v. Washington Apple Advertising Commission*, 432 U.S. at 353–54, 97 S.Ct. at 2446–47 (consumer protection not justified). *See also City of Philadelphia v. New Jersey*, 437 U.S. at 626, 98 S.Ct. at 2537 (environmental purposes insufficient to warrant discrimination against out-of-state waste). The parish's claim that the ordinance will facilitate the detection and deterrence of crime is greatly undermined by the testimony of the parish's own fingerprint expert,

who testified that most of the information obtained through the registration system was of no use to him, and that he had never received any information from the registrations. Plaintiff's Exh. G (Deposition of J. Garlotte at 4–5). In addition, the parish has made no showing of the unavailability of nondiscriminatory alternatives that would serve to protect the local interests in question. The testimony of one expert at trial indicated that persons between fifteen and nineteen commit a disproportionately large percentage of the crime. Record, vol. II, at 361. But under the ordinance's discriminatory registration scheme, local individuals that would most likely fall into this category would not be required to register, since many would be seeking their first jobs. It would appear that a nondiscriminatory registration scheme would *better* serve crime prevention and detection in the parish.

While Ordinance No. 837 in its present form is unconstitutional, it does contain a savings clause, providing for the enforcement of the other provisions of the ordinance in the event that any of its provisions is held invalid. *See* note 2 *supra*, section 11. To give effect to this savings clause, this court would need to read out the ordinance's facial discrimination against interstate commerce by making the registration applicable to all seeking employment in the parish. Even if this would preserve the constitutionality of the ordinance, the registration system here implemented pursuant to the ordinance cannot withstand commerce clause scrutiny.

> "[W]here [non-protectionist] legislative objectives are credibly advanced and there is no patent discrimination against interstate trade, the Court has adopted a much more flexible approach, the general contours of which were outlined in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities."

*City of Philadelphia v. New Jersey*, 437 U.S. at 624, 98 S.Ct. at 2535–36.

This standard is basically the same as the test stated by the court in *Hughes, see* p. 73 *supra*, but gives more deference to the local interests since it assumes that the challenged law does not discriminate against interstate commerce. In applying this standard, a court must examine the benefits that supposedly result from the local law, and not rely merely on the assertion of an accepted local interest. *See* at p. 74 *supra*. The parish hoped that the ordinance would deter criminals from entering the parish as well as aid in their apprehension. These objectives then must be balanced against the burdens on interstate commerce, in light of whether the putative local benefits could be accomplished by less burdensome schemes. The registration system here creates many impediments to the free flow of commerce. First, the information required in the registration process goes far beyond that explicitly authorized by the ordinance, revealing personal information that is unnecessary for normal police identification.[3] Plaintiff's Exh. G (Deposition of J. Garlotte at 4). That detailed personal information must be divulged is particularly intimidating to applicants who do not want to reveal such things as former

---

**3.** The identification form requested the applicant's name, nicknames, and aliases; social security number; driver's license number and issuing state; sex, race, height, weight, hair and eye colors; present address; home and business telephone numbers, former residences for the past five years; last place of employment; occupation; names and addresses of spouse, parents, brothers, and sisters; and voter registration. *See* 466 F.Supp. at 1211–12.

**76**

incarceration or residence in a mental institution, covert cohabitation, illegitimacy, or race, and thereby may refrain from interstate movement. *See* Record, vol. II, at 353–55. In addition, the ten-dollar registration fee creates a definite burden on the movement of migrant labor, especially low-income agricultural workers traveling to harvest crops or to seek better employment. *Id.* at 434–444. The financial impact on employers who pay this fee for large numbers of employees is substantial. The burdens on interstate commerce are indeed weighty in relation to what some parish law enforcement officials conceded were the registration system's somewhat illusory benefits.

Moreover, this court's tolerance of the registration system's burden on interstate commerce dwindles in light of other alternatives open to the parish. It appears that the local interest sought to be advanced by the registration scheme, that of crime control, could be advanced through more narrowly-drawn methods that have a much lesser impact on the free-flow of goods or services in interstate commerce. For example, the information required for the registration process could be more closely integrated with that used for law enforcement and less intrusive to those who must register. We therefore hold unconstitutional the St. Mary Parish registration scheme, even if the facial discrimination is stricken from its authorizing ordinance.

### III

Appellants finally argue that the case should be remanded to the district court for a hearing to determine damages and to decide whether the registration fees that had been collected prior to the injunction granted by this court should be returned. Neither of these claims for relief was presented in the proceedings below since the district court considered only proof relevant to the plaintiffs' prayer for a declaratory decree and an injunction. Record, vol. I, at 147. Though plaintiffs' complaint made no specific request for the return of the registration fees, it did request mone-

tary damages and "such other and further relief as the Court deems to be just and proper." *Id.* at 17. We therefore remand the case to the district court for a determination of further appropriate relief.

REVERSED and REMANDED.